UNITED STATES, Appellee

v

JOHN A. STOLTZ, Hospitalman, U. S. Navy, Appellant

14 USCMA 461, 34 CMR 241

No. 17,246

March 27, 1964

*Lieutenant (jg) Patrick W. Lee,* USNR, argued the cause for Appellant, Accused. With him on the brief was *Captain Charles Timblin,* USN.

*Lieutenant Colonel Remmel H. Dudley,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a general court-martial convened by the Commanding General, Second Marine Division, at Camp Lejeune, North Carolina, the accused was found guilty of robbery, in violation of Uniform Code of Military Justice, Article 122, 10 USC § 922. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction. Intermediate appellate authorities affirmed, and we granted accused's petition upon the contention that:

> "a. *The conditions attached to the grant of immunity given to the chief prosecution witness Stoy are so repugnant to sound public policy as to render his testimony incompetent.*"

In view of the nature of the assigned error, only a brief resumé of the facts disclosed by the record is necessary. Generally speaking, it demonstrates

**461**

that Private First Class Sorell on February 3, 1963, entered an automobile driven by a Sergeant Kinney for the purpose of returning from a bar near Wilmington, North Carolina, to his station at Camp Lejeune. Also riding in the vehicle were Hospitalman Stoy and the accused, Hospitalman Stoltz.

*En route* to Lejeune, Sorell was overpowered, allegedly by the accused, and his wallet and its contents seized. He was then ejected from the vehicle, which proceeded back to the bar at which the ride had commenced.

At the trial, Hospitalman Stoy appeared as a witness for the prosecution, having "received a grant of immunity from General WIESEMAN." His testimony established Stoltz's participation in the robbery, together with accused's intoxication and prior excellent character. At the same time, he minimized his own connection with the alleged crime.

The letter conferring immunity upon Stoy is the focal point of our review. It provides as follows:

"IN THE MATTER OF:
THE UNITED STATES
v

Johnnie A. KINNEY, 1454933,
Sergeant, U. S. Marine Corps
and
John A. STOLTZ, 540 62 06,
Hospitalman, U. S. Navy

GRANT OF IMMUNITY
APR 18 1963

OFFICE OF THE COMMANDING GENERAL

2d Marine Division, FMF
Camp Lejeune, N. C.

"To: Rufus M. STOY, hospitalman third class, 540 60 79, U. S. Navy, Company 'A', 2d Medical Battalion, 2d Marine Division, FMF, Camp Lejeune, N. C.

"1. It appears that you are a material witness for the Government regarding the following charge and specification:

"Charge: Violation of the Uniform Code of Military Justice, Article 122.

"Specification: In that Sergeant Johnnie A. KINNEY, U. S. Marine Corps, Company 'D', 1st Battalion, 8th Marines, 2d Marine Division, FMF, Camp Lejeune, North Carolina, in conjunction with, John A. STOLTZ, hospitalman, U. S. Navy, Headquarters Company, 8th Marines, 2d Marine Division, FMF, Camp Lejeune, North Carolina, did, at or near Wilmington, North Carolina, on or about 3 February 1963, by means of force and violence, and putting him in fear, steal from the person of Private First Class Thomas R. SORELL, U. S. Marine Corps, against his will, a billfold of a value of about $4.00 and eleven dollars ($11.00) U. S. Currency, of a total value of about fifteen dollars ($15.00), the property of the said SORELL.

"2. In consideration of your testimony as a witness for the Government in the foregoing matter, you are hereby granted immunity from prosecution for any offense or offenses arising out of the matters therein involved concerning which you may be required to testify under oath.

"3. It is understood that this grant of immunity from prosecution is effective only upon the condition that you actually testify as a witness for the Government *and that such testimony include the following matters hereinafter set forth which are extracted from your written statement taken on the 7th day of February 1963*:

"a. 'On the evening of 3 February 1963, I went to Wilmington, N. C. with the following named men: Terry Firch H. N., La Clair H. N. and a Corporal E-4, all of whom are attached to "I" company 3rd BN. 2nd Marines.

'We had been drinking in Jacksonville, N. C. since two o'clock in the afternoon, in the bar known as the Double Eagle. Before starting our trip to Wilmington I purchased a bottle of wine which I drank enroute.

We also stopped at various bars along the way, so that by the time we arrived in Wilmington I was fairly well on the way to becoming intoxicated.

'Upon our arrival in Wilmington I continued to drink in various bars until they closed for the night.

'When the bars did close Firch, La Clair, the Corporal and I went to the restaurant known as the Hide-away. Events progressed through the night and I found that Firch and La Clair had gone back to Camp Lejeune without me. At this time I began to look for another ride back to Camp.

'I don't have any idea what time it was when I began talking to Jack Stoltz and John Kinney but I asked them for a ride back to Camp: they answered that they would take me back.

'Some time after this the three of us Stoltz, Kinney and I walked out to the car, as we were "ready to go back," I sat in the rear of the car, where just opposite me slept another man whom I had never seen previously. Kinney and Stoltz sat in the front seat.

'There was a bottle of whiskey in the car and I woke the man seated next to me, offering him a drink. He refused and immediately went back to sleep. I then took a drink from the bottle and must have passed out.

'When I came out of my state of unconsiousness [sic] the car was parked: Stoltz was wrestling with the man seated next to me; Kinney was standing outside the car. I asked what was happening and received no reply. I didn't have any idea what was going on and sat where I was very startled. I asked what they were fighting over and received no answer.

'Events happened very quickly. The man was thrown out of the car at which time we left the area we were parked in.

'I did not remove the other mans wallet from his pocket. Either Kin-

ney or Stoltz handed me a wallet, told me to remove the money and throw the wallet away. I did as I was told —took the money from the wallet and threw the wallet out the window.

'We drove back to the Hide-away, where we remained for a short time and started for Camp Lejeune. We were soon stopped by the police and shortly thereafter arrested by the Military Police.'

"b. It is further understood that your testimony will include, but not be limited to, the facts contained in your statement above, and additionally will encompass all facts and circumstances within your knowledge as such facts and circumstances relate to the offense as charged.

"4. It is further understood that this grant of immunity from prosecution is effective only upon the condition that you actually testify as a witness for the Government and extends only to the offense or offenses in which you were implicated in the matter herein set forth and concerning which you testify under oath." [Emphasis supplied.]

Before us, the accused urges that permitting Stoy so to testify as a witness was contrary to public policy as the grant of immunity was conditioned upon his giving evidence in a certain way against the accused. On the other hand, the Government argues that robbery is so repugnant to sound public policy "that truthful testimony of a co-actor should be admissible."

Insofar as its contention goes, we agree with the United States that the mere fact a witness testifies pursuant to a grant of immunity does not render him incompetent as a witness. Reina v United States, 364 US 507, 5 L ed 2d 249, 81 S Ct 260 (1960); Adams v State of Maryland, 347 US 179, 98 L ed 608, 74 S Ct 442 (1954); United States v White, 10 USCMA 63, 27 CMR 137; United States v Moffett, 10 USCMA 169, 27 CMR 243. But difficulty may immediately arise from the conditions imposed upon the witness by the grant, either from the standpoint of what he

is to gain as a result of cooperation with the prosecution or in view of the qualifications upon which the Government insists in order to safeguard its interests.

Thus, in United States v Scoles, 14 USCMA 14, 33 CMR 226, we criticized as "repugnant to civilized sensibilities" an agreement whereby a convicted co-actor was to receive a reduction of one year in his sentence for each occasion on which he testified against one of the other soldiers allegedly involved. Of such an arrangement, the Court declared at page 20:

". . . We believe such a contingency agreement to be contrary to public policy. It offers an almost irresistible temptation to a confessedly guilty party to testify falsely in order to escape the adjudged consequences of his own misconduct."

The immunity grant now before us is of a different nature, for it simply ▆▆▆▆▆▆▆▆▆▆ purports to eliminate prosecution of the witness as to "the offense or offenses in which you were implicated in the matter herein set forth and concerning which you testify under oath." As a condition of such immunity, however, it required Stoy to testify under oath to the particular matters extracted from his written pretrial statement and quoted in the letter set out above. It is this condition which we believe contravenes public policy and renders Stoy incompetent to testify so long as he labors under its burden, for, regardless of the truth of the matters concerning which he had knowledge, he was bound to reiterate his pretrial declarations in order to obtain the reward which had been tendered him. In short, the grant was conditioned upon the witness giving testimony in a particular way.

In State v Miller, 100 Mo 606, 13 SW 832 (1890), an agreement with an accomplice-witness to testify against the defendant Miller, as opposed to making a full and free disclosure of the facts within his knowledge, was denominated "a bargain . . . [which] should [not] receive any countenance or sanction in a court of justice, . . . [nor] should [he] have been admitted as a

witness in the cause." State v Miller, supra, at page 838. In State v White, 126 SW2d 234 (1939), the Missouri Supreme Court similarly pointed out that an accomplice who agrees to turn state's evidence is a competent witness provided "he has not agreed to testify in a particular way." Id., at page 235. And see the cases collected in Annotation, 120 ALR 751, 753.

The same result was reached with respect to an agreement to give testimony which would cause the defendant being bound over for trial. People v Green, 103 Cal App 2d 491, 228 P2d 867 (1951). There, the Court of Appeals said, at page 872:

". . . Whether Green be innocent or guilty he has not had a trial in accordance with the law of the land. A miscarriage of justice was occasioned through the use by the State of testimony which, *because of the condition upon which immunity depended,* was impure, dubious and 'tainted beyond redemption.'" [Emphasis supplied.]

In accord with this decision are Rex v Robinson, 30 BC 369, 70 DLR 755 (1921) (testimony in conformity with statement to police); United States v Lancaster, 44 Fed 885 (WD Ga) (1890) (as to agreements to testify in a particular way); and Harris v State, 15 Tex Crim 629 (1884) (immunity to co-accused who would make best witness for the State before grand jury). Indeed, we have been referred to no authority upholding the competency of an accomplice-witness whose agreement to testify depended upon the giving of testimony in a particular manner.

Yet, that is precisely what confronts us here. The letter granting Stoy immunity specifically required him to testify in conformity with his pretrial statement which was set out *in haec verba.* Such a condition renders Stoy's testimony "impure [and] dubious." People v Green, supra. If public confidence in the administration of military justice is to be maintained, contractual limitations on the testimony of a witness cannot be tolerated. They obviously detract from the quest for the truth, as the individual seeking to ob-

464

tain the shield of immunity is almost irresistibly tempted so to frame his testimony as to stay within the terms of his "contract." There is, of course, some sort of bargain inherent in any arrangement with an accomplice who thereby becomes a witness for the Government, and the mere fact of its existence does not render the witness incompetent to testify to his knowledge of the events involved. Concurring opinion of Judge Kilday, United States v Scoles, supra. But when the agreement to testify is conditioned by the United States upon bearing witness in a specified manner, we utterly condemn it as a pollution of the stream of justice. We find, therefore, that, as Stoy testified subject to the conditions set forth in the Government's grant of immunity to him, he was not a proper witness. Receipt of his evidence, while the condition remained in effect, was prejudicially erroneous.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.