UNITED STATES, Appellee

v

WILLIAM L. CONWAY, Specialist Four,
U. S. Army, Appellant

20 USCMA 99, 42 CMR 291

No. 23,250

October 16, 1970

*Colonel Daniel T. Ghent, Captain Howard L. Kaplus,* and *Captain Raymond A. DiLuglio* were on the pleadings for Appellant, Accused.

*Colonel David T. Bryant, Captain Larry S. Seuferer,* and *Captain John F. Cooney, Jr.,* were on the pleadings for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

The principal witness against this accused was one Rothfus, an accomplice of the accused in the charged offenses of larceny and forgery, who testified pursuant to an agreement between his own retained counsel and the staff judge advocate of the command in which this case was prosecuted. According to the testimony of the staff

judge advocate, the proposed agreement provided that if Rothfus was willing to testify against the accused and would himself plead guilty to these same charges before a special court-martial, he would not be tried by a general court-martial. The staff judge advocate agreed to recommend the offer to the general "if he [Rothfus' attorney] would furnish me the substance of Rothfus's testimony." Appellate Exhibit VII, an unsworn confession of guilt to the crime of embezzlement by Rothfus and his implication therein of the accused was furnished pursuant to the agreement. Subsequently, and because the summary was considered unsatisfactory by the staff judge advocate, a statement under oath was taken from Rothfus (Prosecution Exhibit VIII). Present at the interrogation, which was conducted in the office of the staff judge advocate, were the witness, his lawyer, a reporter, and trial counsel, acting on behalf of the Government. Trial counsel testified that "I was instructed by the Staff Judge Advocate to take a sworn statement from the individual to better advise the general."

At trial, defense counsel moved for appropriate relief and requested that the law officer declare Rothfus an incompetent witness because of this agreement, citing this Court's opinions in United States v Stoltz, 14 USCMA 461, 34 CMR 241 (1964), and United States v Kinney, 14 USCMA 465, 34 CMR 245 (1964). In connection with the motion, Rothfus testified as follows:

"IDC: . . . Tell us, then, son, what you understand you must do, and if you don't, what will happen to you.

"A. I must testify against Specialist Conway; must follow the statement that I previously made, and if I don't, I'll receive a general court-martial.

"Q. Do you believe that you're free of this coercive threat of getting a general court-martial if you said Conway didn't have anything to do with it? What would happen to you, in your own mind?

"A. I'd face a general court-martial.

"Q. You'd face a general court-martial. What would happen if you changed from that statement they took from you?
"A. I imagine the same thing.

"Q. You'd face a general court-martial? And you feel yourself bound by this, don't you?
"A. Yes, I do, sir.

"Q. You don't want to face a general court-martial, do you?
"A. No, I don't.

"IDC: All right, I have no further questions.

"LO: Cross examine?

"RECROSS EXAMINATION

"Questions by the trial counsel:

"Q. PFC Rothfus, did the Government tell you how you were supposed to testify?
"A. Not how I was supposed to testify, no.

"Q. Actually, that statement on 5 April was gathered to see what evidence you know about the case?
"A. Yes, sir. The letter?

"Q. No, the statement we took in here on 5 April. Was this a fact-finding statement as to what your knowledge is in the case?
"A. Yes, I believe that's what it was.

"Q. Has the Government, at any time, told you you must state this, this, this, and this?
"A. No.

"TC: I have no further questions.

"REDIRECT EXAMINATION

"Questions by the individual defense counsel:

"Q. All right. The Government didn't tell you you should testify this, this, this, and this. But, they said you're to testify against him, right?
"A. Yes, sir.

"Q. And in conformity with that statement that you made?
"A. Yes.

"IDC: All right, I have no further questions."

The law officer rejected the motion on the ground that the facts of the case were not in conformity with those in United States v Stoltz, supra, and, hence, the holding in that case was inapplicable.

In *Stoltz*, supra, one Stoy, a fellow participant in a charged offense of robbery, testified under a written grant of immunity which provided in part that:

"'3. It is understood that this grant of immunity from prosecution is effective only upon the condition that you actually testify as a witness for the Government *and that such testimony include the following matters hereinafter set forth which are extracted from your written statement taken on the 7th day of February 1963. . . .*'" [Ibid., at page 462.]

Thereafter, as noted, the grant of immunity set forth specific data concerning the event which Stoy had previously revealed. In reversing Stoltz's conviction, we said at pages 463, 464, 465:

"'. . . [T]he mere fact a witness testifies pursuant to a grant of immunity does not render him incompetent as a witness. Reina v United States, 364 US 507, 5 L Ed 2d 249, 81 S Ct 260 (1960); Adams v State of Maryland, 347 US 179, 98 L Ed 608, 74 S Ct 442 (1954); United States v White, 10 USCMA 63, 27 CMR 137; United States v Moffett, 10 USCMA 169, 27 CMR 243. But difficulty may immediately arise from the conditions imposed upon the witness by the grant, either from the standpoint of what he is to gain as a result of cooperation with the prosecution or in view of the qualifications upon which the Government insists in order to safeguard its interests.

·    ·    ·    ·    ·

"'. . . We find, therefore, that, as Stoy testified subject to the conditions set forth in the Government's grant of immunity to him, he was not a proper witness. Receipt of his evidence, while the condition remained in effect, was prejudicially erroneous.'"

In United States v Scoles, 14 USCMA 14, 33 CMR 226 (1963), we criticized as "repugnant to civilized sensibilities" an agreement whereby a convicted coactor was to receive a reduction of one year in his sentence for each occasion on which he testified against one of the other soldiers allegedly involved. Of such an arrangement, the Court declared at page 20:

"'. . . We believe such a contingency agreement to be contrary to public policy. It offers an almost irresistible temptation to a confessedly guilty party to testify falsely in order to escape the adjudged consequences of his own misconduct.'"

In the case at bar, Rothfus *believed* that he was required to testify strictly in accordance with the statement obtained from him under oath, by trial counsel, in the office of the staff judge advocate. Failure to do so would, in his opinion, be a violation of his agreement and result in his trial by general instead of by special court-martial. Whether or not the terms of the agreement *required* him to do so is not controlling for the fact of the matter is that he thought they did. His belief is not unreasonable in light of the rejection of the written, unsworn summary of his expected testimony and the taking of an extensive (eighteen pages) statement under oath by the very officer who prosecuted this case. Since the statement was the *sine qua non* for the staff judge advocate's recommendation that the general accept the offer made by Rothfus' attorney, his belief that he must testify to the same effect at Conway's trial follows logically. His testimony is subject to the same infirmities discussed in United States v Stoltz, supra. A reading of that decision is recommended.

Absent evidence of a complete understanding between the Government and the witness that the latter is to testify only as to the truth of the matters involved, we must hold that in this case

Rothfus was an incompetent witness. *United States v Stoltz, supra.*

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge QUINN concurs.

DARDEN, Judge (concurring):

If an accomplice to crime furnishes a convening authority a true statement and indicates he is willing to testify in accordance with it, his testimony ought to be competent, even if he receives some benefit such as being tried himself only by a special rather than a general court-martial. Judge Kilday noted in his separate opinion in *United States v Scoles,* 14 USCMA 14, 22, 33 CMR 226 (1963), that arrangements of this type are a result of express or implied bargaining. The essential element is that the testimony be truthful; it is not made untruthful solely because it coincides with a statement the witness has furnished previously. This is my understanding of the holding in *United States v Stoltz,* 14 USCMA 461, 34 CMR 241 (1964).

Since in this case the questioning of the accomplice-witness failed to elicit from him that he was to testify only in a truthful manner, even if such testimony departed from his statement that led to his agreement, I join in reversing and in permitting a rehearing.