## UNITED STATES, Appellee

v

## PAUL S. NELSON, Private First Class, U. S. Army, Appellant

No. 28,184

January 3, 1975

*Captain Albert T. Berry* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Colonel Victor A. DeFiori, Captain Dennis D. Daly, Captain Lawrence I. Wagner,* and *Captain Winston E. King.*

*Captain Gary F. Thorne* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen,* and *Captain R. Craig Lawrence.*

### OPINION OF THE COURT

FERGUSON, Senior Judge:

We granted this appellant's petition for review to consider the question of whether the post-trial review of the staff judge advocate was adequate absent any discussion therein of either of two contested search and seizure issues or a possible grant of immunity to a key prosecution witness.

In a trial by a general court-martial convened by the Commanding General, 3d Infantry Division, at Wurzburg, Germany, the accused pleaded not guilty to offenses alleging extortion, simple assault, sale and possession of morphine, possession of hashish and hydromorphine, communicating a threat and carrying a concealed weapon, in violation of Articles 127, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 927, 928, and 934. Although acquitting the appellant of the extortion offense, the court composed with members returned findings of guilty on all the remaining charges and specifications and sentenced appellant to a dishonorable discharge, confinement at hard labor for 5 years, forfeiture of all pay and allowances, and reduction to pay grade E-1. The convening authority approved but the United States Army Court of Military Review, after likewise affirming the findings, reduced the confinement portion to 2 years while otherwise affirming the remaining portions of the sentence as adjudged.

The principal figure in the Government's entire case against this appellant was a Private First Class Garry L. Stephenson, an admitted user of drugs on a rather extensive basis. In addition to providing the only direct testimony bearing on the majority of these charged offenses, PFC Stephenson was formerly instrumental in providing military authorities with the information upon which probable cause for two searches of the appellant were predicated. By a motion for appropriate relief to suppress the items seized, the defense contested the legality of both of those searches at

an Article 39(a) session by contending, *inter alia*, that Stephenson's reliability was not sufficiently established by the officers who authorized those searches to meet the requirement of probable cause.[1]

Based upon the evidence as presented by the prosecution on these motions, the military judge ruled that both of the searches and seizures were valid. The seized items consisting of various drugs and a statement allegedly forcibly obtained from Stephenson at gun point were subsequently introduced into evidence during the Government's case in chief before the full court.

Apart and aside from this real evidence, which also consisted of two pistols and a pistol clip seized from another soldier, PFC Stephenson was the Government's only witness. After thus testifying to all offenses except those involving the accused's alleged possession of prohibited drugs, Stephenson revealed, on cross-examination, his own past drug use and the fact that he had previously provided information and testified as a prosecution witness in other drug cases. Cross-examination of Stephenson continued with the following:

Q. Have you ever been prosecuted for your use of drugs?
A. No, I haven't.

Q. Why do you think you haven't been prosecuted?
A. Because I have a piece of paper in my pocket that says I can't be prosecuted.

Q. How did you get that piece of paper?
A. From Captain Eastburn.[2]

Q. And this was in order to get you to testify?

A. Right.

Q. And now you can't be prosecuted?
A. Right.

During its case in chief, the defense repeatedly attacked Stephenson's credibility by calling a number of witnesses from Stephenson's platoon and company, mostly senior noncommissioned officers, who all testified that they would not believe Stephenson under oath. The defense also sought to impeach Stephenson by showing prior inconsistent statements concerning the extent and frequency of his admitted drug involvement. No further mention of Stephenson's purported grant of immunity is contained in the record of these trial proceedings, however, until a subsequent out-of-court session during which proposed instructions were discussed, and the following transpired:

MJ: . . . I will of course, include the portion of the instruction relating to the fact that the witness has a grant of immunity for testifying because he has so testified. Although let me state one thing, I think I may have to check the record. I think he stated he had a grant of immunity in the Wright case.

DC: Your Honor, that is correct; however, his belief in his grant of immunity is what is important. His testimony was that he has not been prosecuted for these offenses because he has a grant of immunity in his pocket. Regardless of what that grant of immunity really is, his testimony indicated that he believed his grant of immunity was to testify for all of the acts he did.

TC: I would like to state for a fact, Your Honor, that this witness *does not* have a grant of immunity.

---

[1] The defense motion to suppress actually involved items seized during four separate searches. In addition to the two searches of appellant here in issue, the defense also moved to suppress items seized during a search of the appellant on August 5, 1972. The specification to which those items seized on August 5 related, however, was dismissed prior to the trial on the merits. Recognizing that there was no standing to object to two pistols and the pistol clip seized during a separate search of appellant's accomplice on September 19, 1972, moreover, the defense only contested the introduction of those items on the basis that an insufficient foundation had been laid to connect the appellant with them.

[2] The Government and the defense both apparently agree that Captain Eastburn was a trial counsel assigned to the Office of the Staff Judge Advocate, 3d Infantry Division, the commander of which convened the instant general court-martial.

DC: That fact is not before the court.

MJ: I'm aware of that. I don't think all this argument is necessary. I will advise them that the reason he has not been prosecuted is the fact that he has a grant of immunity in his pocket. I will advise them that was his testimony. I will also advise them that he may be motivated to falsify his testimony in his own self-interest in order to obtain a grant of immunity from prosecution.

In purporting to summarize the prosecution's evidence as established at trial, the staff judge advocate, except for noting that the drugs which constituted the subject of the unlawful possession offenses were seized during a search of the appellant's person and wall locker based upon information provided by Stephenson, did not otherwise include in his post-trial review any of the testimony upon which the Government relied in attempting to establish the probable cause for the two searches. His only reference to the defense motions seeking to suppress those seized items was as follows:

The defense moved to preclude introduction of drugs and pistols seized repeatively, (sic) 28 July 1972 and 19 September 1972 in the course of searches which the defense argued were illegal.[3] Following testimony and argument by counsel the Military Judge denied the motion (R 6-58). While the fruits of an illegal search is unquestionably inadmissible in evidence (MCM 1969 (rev) par 152) my study of the record convinces me that the motion was properly denied.

In addition, the staff judge advocate made no mention whatever in his review of the fact that PFC Stephenson had revealed on cross-examination that he was testifying under a grant of immunity.

Regarding the form and content of a staff judge advocate's post-trial review, paragraph 85b, Manual for Courts-Martial, United States, 1969 (Rev.), provides the following:

The staff judge advocate or legal officer to whom a record of trial is referred for review and advice will submit a written review thereof to the convening authority. The review will include a summary of the evidence in the case, his opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity respecting the proceedings, and a specific recommendation as to the action to be taken. Reasons for both the opinion and the recommendation will be stated.

As applied to the case at bar, appellate government counsel submit that the instant post-trial review sufficiently presented an accurate account of the search and seizure motions raised at trial in that a discussion of the *legal* parameters of those motions was neither necessary nor appropriate under paragraph 85b, MCM. As support for this position, the Government relies upon the language as further contained in paragraph 85c, MCM, to the effect that the convening authority should ordinarily accept the opinion of his staff judge advocate as to the *legal* effect of any error or irregularity in the proceedings and the adequacy of the evidence. These *legal* determinations, it is submitted, are quite different and apart from such *factual* matters as the weight of the evidence, the credibility of the witnesses, and determinations of controverted questions of fact which are within the particular province of the convening authority and which must, therefore, be included in the post-trial review.

In view of the additional omission by the staff judge advocate as raised by our grant of review, however, we need not reach the question of whether the staff judge advocate's failure to summarize and include all testimony relative to those search and seizure issues raised at trial is, standing alone, sufficient to render the post-trial review prejudicially incomplete and inadequate. See *United*

---

[3] This summary by the staff judge advocate not only inaccurately reflects the defense objection to the introduction of the pistols but also completely overlooks altogether the search of the appellant's person on September 19, 1972, which resulted in the seizure of Stephenson's purported statement.

*States v Evans,* 13 USCMA 598, 33 CMR 130 (1963). Our ultimate disposition of this case likewise renders it unnecessary to decide whether the convening authority was disqualified from reviewing and acting upon this record by reason of a subordinate's possible grant of immunity.[4] See *United States v Sierra-Albino,* 23 USCMA 63, 48 CMR 534 (1974); *United States v Dickerson,* 22 USCMA 489, 47 CMR 790 (1973); *United States v Maxfield,* 20 USCMA 496, 43 CMR 336 (1971).

As revealed by the record, PFC Stephenson unequivocally testified that he had a grant of immunity. But the trial counsel, without having further questioned him or having introduced other evidence to clarify this matter, simply later stated that Stephenson did not have such a grant. Resolution of the question of whether PFC Stephenson in fact had a grant of immunity or whether he only believed he had one need not detain us because, in either event, the effect upon his credibility is exactly the same. As we recognized in *United States v Conway,* 20 USCMA 99, 42 CMR 291 (1970), a confessed guilty party, even when operating upon such a belief alone, might otherwise be tempted to testify falsely in order to maintain his eventual escape from the possible consequences of his own misconduct.[5]

As we thus view the record of these trial proceedings, the principal issue in this case concerns the credibility of PFC Stephenson as the prosecution's only trial witness. Although drawing the convening authority's attention to Stephenson's admitted drug use and adequately summarizing the testimony of the defense witnesses who would not believe Stephenson under oath, the staff judge advocate, while stating his opinion that Stephenson's testimony was nonetheless truthful, failed to make any mention of the testimony by Stephenson wherein he stated his belief that he was testifying under a grant of immunity.

The failure of a staff judge advocate to include similar information in a post-trial review bearing upon the credibility of a key prosecution witness was considered by this Court in *United States v Collier,* 19 USCMA 580, 42 CMR 182 (1970). In that case, the prosecution's principal witness was a former Marine named Arfa, who had been administratively discharged because of his possession and use of marihuana. In testifying that he had purchased heroin from the accused under the direction of the Office of Naval Intelligence, Arfa also related that he was never brought to trial because of his assistance. Omitted from the post-trial review of the staff judge advocate in that case was any mention of the testimony of a Captain Williams, a defense witness, who testified that he would not believe Arfa, the Government's witness, under oath, but did find the accused truthful and a credit to the Marine Corps. In there holding that the staff judge advocate's review was prejudicially inadequate absent any mention of that testimony, we stated:[6]

> Inasmuch as the principal issue in this case was the credibility of the witness Arfa, as the staff judge advocate and the parties at trial agreed, it is difficult to comprehend how the convening authority was in a position to judge the credibility of the witnesses and to be satisfied of the accused's guilt beyond a reasonable doubt (United States v Grice, 8 USCMA 166, 23 CMR 390 (1957)) absent information relative to the testimony of Captain Williams, not only as to Arfa but as to the accused as well. Omission of any mention of this testimony from the summary of the evidence can only be viewed as resulting in an inadequate and incomplete post-trial review. Prej-

---

[4] Since we find that a new review and action by a different convening authority and staff judge advocate is required by reason of this prejudicially inaccurate and incomplete review, we reach precisely the same result and remedy were we to conclude that the convening authority was also disqualified from reviewing this record.

[5] *See also* United States v Kinney, 14 USCMA 465, 34 CMR 245 (1964); United States v Stoltz, 14 USCMA 461, 34 CMR 241 (1964); United States v Scoles, 14 USCMA 14, 33 CMR 226 (1963).

[6] United States v Collier, 19 USCMA 580, 581, 42 CMR 182, 183 (1970).

udice to the substantial rights of the accused is apparent.

While recognizing that a staff judge advocate must necessarily be selective in summarizing evidence to include in his post-trial review, we have, nonetheless, consistently reaffirmed the principle that important testimony relating to key issues in the case which may have a substantial influence on the convening authority must be included and that the failure to do so is reversible error. *United States v Scaife,* 23 USCMA 234, 49 CMR 287 (November 22, 1974); *United States v Smith,* 23 USCMA 98, 48 CMR 659 (1974); *United States v Roeder,* 22 USCMA 312, 46 CMR 312 (1973); *United States v Samuels,* 22 USCMA 238, 46 CMR 238 (1973); *United States v*

*Cruse,* 21 USCMA 286, 45 CMR 60 (1972). Given the failure of the staff judge advocate in the present case to include in his review any discussion of an important factor relative to the credibility of Stephenson's trial testimony, we can only conclude that the convening authority was here deprived of an opportunity to make an independent determination and assessment of the Government's evidence, the strength of which was built entirely upon this one witness.

The decision of the Court of Military Review is accordingly reversed and the record of trial is returned to the Judge Advocate General of the Army. A new review and action by a different convening authority may be ordered.

Judges QUINN and COOK concur.