UNITED STATES, Appellee,

v.

Daryl GARCIA, Sergeant, U. S. Air Force, Appellant.

No. 28,833.

U. S. Court of Military Appeals.

May 9, 1975.

Major *John A. Cutts, III*, argued the cause for Appellant, Accused. With him on the brief were *Colonel William E. Cordingly* and *Lieutenant Colonel James LaBar*.

*Captain Alvin E. Schlechter* argued the cause for Appellee, United States. With him on the brief were *Colonel C. F. Bennett* and *Captain Frederick P. Waite*.

## OPINION OF THE COURT

COOK, Judge:

On two grounds, the accused challenges the validity of his conviction by special court-martial for violation of an Air Force regulation prohibiting the sale of marihuana. The first challenge is to the correctness of a ruling by the trial judge limiting the scope of defense counsel's closing argument as to the issues to be considered in the determination of the accused's guilt; the second attack is on the legal effect of an agreement for the payment of compensation by the Government to its principal witness, Airman Bowman.

At trial, the accused testified in his own defense. The substance of his testimony was that he was not involved in the alleged sale at Chanute Air Force Base, Illinois. He maintained, with corroboration by other witnesses, that at the time of the purported sale he was with his wife and friends at a department store in a nearby town.

In final argument to the trial judge, who sat without court members, defense counsel contended that the "alibi evidence," and certain perceived deficiencies in the Government's case, demonstrated the Government had not established the accused's guilt beyond a reasonable doubt. Counsel then discussed the legal effect of an agreement between the Government and Airman Bowman. Relying upon an opinion by the United States Court of Appeals for the Fifth Circuit,[1] he maintained that the nature of the agreement was such that it supported a conclusion that the accused was entrapped by Bowman into committing the offense. The judge interrupted the argument. Expressing doubt that the cited opinion represented "good law," he insisted that the defense of entrapment was "inconsistent with . . . the defense case on alibi," and he refused to "allow entrapment argument."

On the surface, alibi and entrapment appear to be antithetical defenses. The defense of alibi denies commission of the crime; in claiming entrapment, the accused admits he committed the crime charged, but asserts a right to exculpation because his will to be law abiding was overborne by a Government agent's inducement to commit the offense. *See United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Consequently, it is often said that alibi and a claim of entrapment are inconsistent. Sometimes this facial inconsistency is perceived as barring one or the other of the defenses. Thus, this Court has said that "the defense of entrapment is not available to one who denies commission of the offense." *United States v. McGlenn*, 8 U.S.C.M.A. 286, 292, 24 C.M.R. 96, 102 (1957). Appellate defense counsel acknowledge the frequent appearance of such state-

1. *Sears v. United States*, 343 F.2d 139 (5th Cir. 1965).

ments as *McGlenn's* in judicial opinions, but they argue that the concept is inapplicable to this case on the basis of both principle and precedent.

As early as *United States v. Snyder*, 6 U.S.C.M.A. 692, 700, 21 C.M.R. 14, 22 (1956), and as recently as *United States v. Walker*, 21 U.S.C.M.A. 376, 381, 45 C.M.R. 150, 155 (1972), we recognized that inconsistent defenses are allowable and proper in a criminal case. In practical terms, an accused may find it difficult, if not impossible, to testify, in a convincing way, that he did not commit the crime because he was at another place, and also that he did commit the crime, but he had been lured into doing so by a Government agent. Still, a defense of alibi may merely be alternative to, not inconsistent with, a claim of entrapment. Consider a case involving an alleged sale of narcotics. The accused testifies he did not make the sale, and at the time of its alleged commission, he was at a different place. Other defense witnesses testify that they were present at the time and place of the sale and overheard a conversation between two persons, one of whom they identify as the Government witness who testified that he had purchased the narcotics from the accused; their account of the conversation would support a conclusion that the Government's witness entrapped the unidentified person into selling the narcotics to him. The accused's complete defense, thus, amounts to this: "I say I wasn't at the place of the crime and I did not commit it, but if you don't believe me, then believe the other witnesses whose testimony demonstrates that I was entrapped." In a case of that kind, the two aspects of the defense are not so repugnant to each other that disbelief of the first necessarily disproves the second. As to precedent, *Sears v. United States*, 343 F.2d 139, 143 (5th Cir. 1965), the case relied upon by defense counsel at trial, expressly held that when "the Government's own case in chief injected substan-

tial evidence of entrapment into the case, the defendant is entitled to raise the defense," even though his own case rested on alibi. Appellate defense counsel refer us to other cases of like import.[2]

Whether *McGlenn's* concept is still viable, and more to the point, whether it supports the trial judge's ruling limiting the issues for his consideration as trier of the facts, need not detain us. For purposes of this appeal, we assume, without deciding, that if sufficient evidence of entrapment appears in the Government's case, the defense must be considered by the factfinders in determining whether the accused is guilty of the charge. That assumption, however, does not help the accused because nothing in the record hints at even the possibility that he was entrapped.

Airman Bowman met the accused at Chanute Air Force Base in September 1973, and thereafter went with him "socially" and saw him "frequently." In November, Bowman was under investigation for the possession and sale of heroin by agents of the Office of Special Investigations; he was asked, and agreed, to furnish them with information about others involved with drugs. We shall discuss the terms of the agreement later.

The accused lived with his wife and child in a house located off base. According to Bowman, he went to the accused's house on December 3. He arrived about 7:30 p. m., and stayed until about 10:00 p. m. He and the accused just "[s]at around and talked." At one point in the conversation, Bowman asked the accused "if he would bring a lid over after work" the next day.[3] The accused "said he would." He further indicated that he would get off work early because he had to go to a race relations class. The meeting place was to be the parking lot adjoining Bowman's barracks. The next morning, Bowman telephoned Agent Rowe to advise him of the scheduled meeting.

2. *United States v. Smith*, 407 F.2d 202 (5th Cir. 1969); *Crisp v. United States*, 262 F.2d 68 (4th Cir. 1958); *People v. Perez*, 62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934 (Cal.1965).

3. A lid of marihuana is supposed to weigh 1 ounce, but sometimes it weighs less; it "always" sells for $20.

To monitor the anticipated sale, Agents Rowe and Picciuti searched Bowman completely before the scheduled meeting with the accused. Their purpose was to assure themselves that he had no money and no drugs in his possession. All his personal effects were taken from him. He was provided with two $10 bills for the purchase price. Except for periods covering "several seconds" and one that "may have been as much as a minute," from the time of the search to the time of the alleged sale, at least one agent kept Bowman in sight.

At about 6:15 p. m., the accused drove into the parking lot at Bowman's barracks and was approached by Bowman. It was then drizzling. The accused rolled down the window of his car and talked with Bowman for a time estimated between 30 seconds and about a minute. They then went into the laundry room of the barracks. Inside, they talked for about a minute, when Bowman gave the accused the money, and the accused "put the lid" into the pocket of Bowman's field jacket. The transfer was visible to Agent Picciuti, who was in a van in the parking lot opposite the laundry room. Picciuti specifically, and Bowman inferentially, indicated that the laundry room was well lighted. After the transfer, Bowman and the accused continued their conversation "for a couple of minutes more." The accused left in his car, and Bowman was "picked up" by the agents to be searched again and to be questioned about the transfer. No effort was made at that time to apprehend the accused because the agents "intended to go further."

■ The defense of entrapment is not predicated upon the degree of covert police involvement in the criminal activity of the accused; rather, it is rooted in the concept that Government officers cannot instigate the commission of a crime by one who would otherwise remain law abiding. Consequently, the focus of the defense is not upon the Government agent but upon the accused, and the essential inquiry is upon the accused's "intent or predisposition . . . to commit the crime." *United States v. Russell, supra*, 411 U.S. at 429, 93

S.Ct. at 1641. No hint of innocence appears in the accused's conduct or apparent intentions, as related by Bowman.

Immediately upon being asked by Bowman, the accused agreed to the sale, and to a time and place for the transfer. The accused accepted the money for the marihuana from Bowman without qualm or disquiet and he unhesitatingly effected the transfer. In short, Bowman's account of his entire dealings with the accused excludes any possibility that he entrapped him. *United States v. Suter*, 21 U.S.C.M.A. 510, 45 C.M.R. 284 (1972).

■ With certain exceptions, such as matters that can be judicially noticed or are commonly known in the community, argument by counsel "must be based upon matters in evidence." *United States v. Long*, 17 U.S.C.M.A. 323, 326, 38 C.M.R. 121, 124 (1967). Consequently, the trial judge was correct in not allowing defense counsel to argue that entrapment was an issue for his consideration in determining the accused's guilt of the offense charged.

■ Turning to Bowman's agreement with the Government, we observe first that in modern practice, the interest a person may have in the outcome of a case does not, in general, disqualify him as a witness. An expert, for example, may demand and be paid a fee for his voluntary appearance as a witness at a trial; the agreement does not render him incompetent as a witness, although the fact of payment may be considered in the assessment of his credibility and the determination of the weight of his testimony. An informant who is paid cash or receives other benefits, such as immunity from prosecution, is essentially in the same position as the expert. However, appellate defense counsel contend that the general rule does not apply to the agreement before us.

In *United States v. Scoles*, 14 U.S.C.M.A. 14, 33 C.M.R. 226 (1963), we took note of an agreement between the Government and a witness who had been promised that his own sentence to confinement would be reduced by 1 year each time he testified

against another person. We condemned the agreement as "repugnant to civilized sensibilities" because it offered "an almost irresistible temptation to a confessedly guilty party to testify falsely in order to escape the adjudged consequences of his own misconduct." *Id.* at 20, 33 C.M.R. at 232.

Counsel construe *Scoles* to mean that an agreement of the kind mentioned "raises an inference that the accused was impermissibly induced to commit the offense." In other words, the agreement itself constitutes prima facie evidence of entrapment. If *Scoles* addresses only entrapment, the defense contention would be directly contrary to the decision of the United States Supreme Court in *Russell.* Appellate defense counsel recognize that circumstance, and urge us to disregard the majority opinion in *Russell* and to overrule at least part of our opinion in *Suter.* We are not attracted to that position. Actually, we are not required to reach it. *Scoles* is consistent with *Russell.* The opinion of the Supreme Court differentiates between Government conduct in regard to the defense of entrapment and Government conduct which violates the accused's right to due process and thereby bars it "from invoking judicial processes to obtain a conviction." *United States v. Russell, supra,* 411 U.S. at 431–32, 93 S.Ct. at 1643.

■ Government payment to an individual, in the form of money or other benefit, for information of wrongdoing by others has a long history. In a variety of situations, it has explicit or implied judicial sanction.[4] But, testimony obtained from a witness pursuant to an agreement he has with the Government which irresistibly induces falsification on his part is virtually indistinguishable from the presentation of testimony which the Government specifically

knows is false. The latter violates the accused's right to due process;[5] the former, therefore, is similarly to be condemned.

■ An agreement conferring a benefit upon a witness in return for his testimony does not render the witness incompetent if he does not labor under the burden, mistaken or otherwise, that by virtue of the agreement he must testify in a particular way, "regardless of the truth of the material concerning which he had knowledge."[6] In other words, the agreement for payment does not deny the accused due process if the witness knows and understands he must testify "only as to the truth."[7]

The agreement in issue was somewhat differently described by Bowman and Agent Rowe. As Bowman's understanding of it is controlling, we look only to his account, therefore, to determine what he perceived his obligation as a witness to be.

Several weeks before his transaction with the accused, Bowman was, as previously noted, under investigation by Agents Rowe and Picciuti on a narcotics charge. They asked him "to work for them." Although he did not say so expressly, his testimony leaves no doubt that he agreed to do so. He was to be paid a different but unspecified amount, depending "on what . . . [he] bought;" the payment for marihuana was to be less than that for heroin. In addition, he was "to get off easier" on the charges against him "but . . . [he] wouldn't get off all the way."

Bowman testified that in the interim between the agreement and his transaction with the accused he had been asked by the agents "if . . . [he] knew something" regarding various drug incidents; he maintained that "*if . . . [he] did,*" he told them what he knew (emphasis supplied). This testimony, in our opinion, demon-

4. *See United States v. Nealy,* 46 C.M.R. 989 (A.F.C.M.R.1973), *petition denied,* 22 U.S.C. M.A. 622, 46 C.M.R. 1324 (1973); *United States v. Grimes,* 438 F.2d 391 (6th Cir. 1971), *cert. denied,* 402 U.S. 989, 91 S.Ct. 1684, 29 L.Ed.2d 155 (1971).

5. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v.*

*Beatty,* 10 U.S.C.M.A. 311, 27 C.M.R. 385 (1959).

6. *United States v. Stoltz,* 14 U.S.C.M.A. 461, 464, 34 C.M.R. 241, 244 (1964).

7. *United States v. Conway,* 20 U.S.C.M.A. 99, 101, 42 C.M.R. 291, 293 (1970).

strates that Bowman understood that his obligation was to tell the truth as to what he actually knew. More importantly, testimony by Agent Rowe indicates that the information provided by Bowman "checked out" through verification from "another source."

 On the record, in word and deed, Bowman made manifest his understanding that he was to tell only the truth. Thus, Bowman's credibility cannot be decided as a matter of law, on the basis of the potential for falsity inherent in the agreement. All that appears is the usual situation in which the credibility of a witness must be determined on the basis of all the evidence, including the agreement. We conclude, therefore, that the trial judge correctly ruled against the accused as to the legal impact of the agreement.

The decision of the Court of Military Review is affirmed.

Senior Judge FERGUSON concurs.

Chief Judge FLETCHER did not participate in the decision of this case.