UNITED STATES, Appellee,

v.

Specialist Five Eddie M. DAVIS, Jr.,
242–98–5307, United States
Army, Appellant.

CM 444990.

U.S. Army Court of Military Review.

29 May 1986.

For Appellant: Lieutenant Colonel William P. Heaston, JAGC, Major Lawrence F. Klar, JAGC, Captain Ann M. Kanamine, JAGC, Captain Paul E. Conrad, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Major Patrick M. Flachs, JAGC, Captain Richard G. Mann, Jr., JAGC, Major Robert L. Swann, JAGC (on brief).

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

Appellant was tried by a general court-martial which included commissioned and enlisted members. Contrary to his pleas, he was convicted of three parallel sets of specifications alleging possession and distribution of marijuana in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (1982). The sentence, which included a bad-conduct discharge, confinement for three years, total forfeitures, and reduction to Private E–1, was approved by the convening authority.

Appellant has submitted several assignments of error. Only two require extended discussion.

## I

THE APPELLANT WAS PREJUDICED BY THE MILITARY JUDGE'S ERRONEOUS REFUSAL TO ALLOW DEFENSE COUNSEL TO PRESENT EVIDENCE OF APPELLANT'S GOOD CHARACTER AND LAW–ABIDING-NESS.

At trial, appellant's counsel contended that the introduction of certain prosecution evidence had "opened the door to allow me to submit evidence of law-abidedness [sic] for this individual accused." The trial judge ruled that such evidence was not admissible in a drug case like appellant's and that the government's evidence had not opened the door to an exception. The advantages of hindsight, including the opportunity for research and reflection, allow us to discern where the trial participants went astray. First, the trial defense counsel failed to note that evidence of the law-abiding character of an accused is virtually (and perhaps literally) always admissible under Military Rule of Evidence 404(a)(1).[1] *United States v. Clemons*, 16 M.J. 44, 50 (CMA 1983) (Everett, C.J., concurring); *United States v. Hewitt*, 634 F.2d 277 (5th Cir.1981);[2] *but see United States v. Stephens*, 17 M.J. 673 (ACMR 1983), *pet. denied*, 18 M.J. 278 (CMA 1984). Thus, it was unnecessary for him to seek admission through a door opened by the government's evidence. Second, the trial judge evidently confused the rules governing the admissibility of evidence of law-abiding character with those governing the admissibility of evidence of good military character. *Compare United States v. Piatt*, 17 M.J. 442 (CMA 1984) (in prosecution of drill instructor for various assault offenses, accused should have been allowed to present evidence of his good character as a drill instructor where the charges had arisen in

---

1. The pertinent portions of Rule 404 are as follows:

   (a) *Character evidence generally.* Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

   (1) *Character of the accused.* Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same.

2. In essence, these cases hold that being "law-abiding" is a "trait of character" and that the presence of that trait diminishes the likelihood of guilt of a crime.

the context of his performance as a drill instructor; this specific trait of military character was clearly relevant to his intent to commit the charged offenses), and *United States v. Lutz*, 18 M.J. 763 (CGCMR 1984) (evidence of accused's good military character was not pertinent to determining guilt of offenses involving child abuse), *with Clemons, supra,* (character for lawfulness was a "pertinent trait of character of the accused" in light of defense theory that accused took victims' property in order "to teach them a lesson" regarding proper barracks security). In fact, evidence of appellant's law-abiding character was admissible, whether the government had "opened the door" or not. However, appellant failed to preserve the issue.

Military Rule of Evidence 103 provides, in pertinent part:

### RULINGS ON EVIDENCE

(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling materially prejudices a substantial right of a party, and

. . . .

(2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the military judge by offer or was apparent from the context within which questions were asked.

■ No evidence of appellant's law-abiding character was proffered for admission nor did appellant make an offer of proof as to such evidence. The record simply does not reflect what evidence, if any, appellant might have been able to present in order to show that he had a law-abiding character. Consequently, any attempt on our part to assess the prejudice which might or might

not have resulted if appellant had offered such evidence and the trial judge had refused to admit it would be sheer speculation. This is precisely the situation which Rule 103(a)(2) was designed to prevent. Therefore, appellant's failure to make an offer of proof waived any error. *United States v. Salgado-Agosto*, 20 M.J. 238 (CMA 1985).[3]

In addition to the provisions quoted above, however, Rule 103 also contains the plain error rule:

(d) *Plain error.* Nothing in this rule precludes taking notice of plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge.

There may be a conflict among the United States Courts of Appeal as to whether the plain error rule applies to cases in which an offer of proof has been omitted. *Compare United States v. Winkle*, 587 F.2d 705, 710 (5th Cir.) (absent an adequate offer of proof, court will "not even consider the propriety of the decision to exclude the evidence at issue"), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979), *with United States v. Martin*, 694 F.2d 885, 889 (1st Cir.1982); *Ellis v. City of Chicago*, 667 F.2d 606, 612 (7th Cir.1981); *United States v. Polk*, 550 F.2d 1265, 1268 (10th Cir.), *cert. denied*, 434 U.S. 838, 98 S.Ct. 129, 54 L.Ed.2d 100 (1977) (courts examined for plain error where no offer of proof made, but found no plain error). In the case at bar, at least, the resolution of this conceptual question would have no practical effect on the outcome. Assuming that it is proper to search for plain error in the absence of an offer of proof, reversal still cannot follow unless plain error is found, and, in our view, "found" does not mean speculated into existence. As the United

---

3. In our view, an offer of proof should include the following elements: (a) a full statement of the evidence that would be presented; (b) a statement of the issue(s) the evidence would affect; and, (c) an explanation of how the issue(s) would be affected by the evidence. *Cf. United States v. Winkle*, 587 F.2d 705, 710 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979). While we are inclined to the

view that only the first of these elements is required to preserve an issue under Military Rule of Evidence 103(a)(2), *see* Analysis, Military Rule of Evidence 103(a), the information contained in the second and third elements is often necessary to insure that the full effect of an error can be discerned and remedied on appeal.

States Court of Military Appeals recently said in a slightly different context:

> [W]ithout viewing the error in the context of the facts of the particular case, "[i]t is simply not possible for an appellate court to assess the seriousness of the claimed error." *United States v. Young,* [470 U.S. 1038, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985)].

> In order to constitute plain error, the error must not only be ... substantial, it must also have "had an unfair prejudicial impact on the jury's deliberations." *Id.* n. 14. The plain error doctrine is invoked to rectify those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Atkinson,* [297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)]. As a consequence, it "is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady,* [456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)].

*United States v. Fisher,* 21 M.J. 327, 328–29 (CMA 1986).[4]

■ Here, the record simply does not support the conclusion that the trial judge's ruling resulted in a miscarriage of justice. Similarly, the record before us does not reflect a "serious [e]ffect [on] the fairness, integrity or public reputation of judicial proceedings." Consequently, we must deny appellant's prayer for relief.

## II

## THE MILITARY JUDGE ERRED BY FAILING TO GRANT TRIAL DEFENSE COUNSEL'S MOTION TO DISMISS BASED ON THE TRIAL COUNSEL'S IMPERMISSIBLE INTERFERENCE WITH THE TESTIMONY OF A DEFENSE WITNESS.

According to a covert agent and a confidential informant who testified for the government at appellant's trial, appellant initially sold them marijuana after they were introduced to appellant by a Specialist Four Darity. Prior to appellant's trial, Darity made a statement to military investigators admitting that involvement and was charged as a principal to the transaction. Darity then submitted a request for an administrative discharge for good of the service. This request also contained an admission of his guilt. Following approval of his request for discharge, however, Darity testified at the pretrial investigation[5] of the charges against appellant that he had not introduced the government agents to appellant.

This testimony prompted the government representative at the investigation to advise Darity that his administrative discharge could be revoked on the basis of such testimony and to warn him against perjury. After the investigation, the same officer, acting in her capacity as trial counsel in appellant's case, telephoned Darity's counsel to warn him that Darity could be prosecuted for perjury if he testified at trial as he had at the pretrial investigation. Darity's counsel discussed the matter with Darity. When next interviewed by appellant's counsel, Darity recanted his testimony at the pretrial investigation to the extent that he once again maintained that he had introduced the government agents to appellant on the occasion of the first sale.

Darity then announced an intention to assert his right to remain silent if called to testify at appellant's trial, whereupon the convening authority ordered Darity to "testify truthfully concerning [his] knowledge of any matter related to [appellant's] alleged offenses." This order included a grant of testimonial immunity except for prosecution for perjury or "giving false statement."

At appellant's trial, it was established that, if called, Darity would testify that he

---

4. The specific question in *Fisher* was the propriety of a *per se* application of the plain error rule to a particular instructional defect, but the quoted passage addresses the broader question of the fundamental nature and purposes of the plain error rule.

5. Article 32, UCMJ, 10 U.S.C. § 832.

had introduced the government agents to appellant. Appellant's defense was based on his own testimony denying any involvement in the charged transactions and alibi evidence. Neither party called Darity to testify on the merits of the case, although he did testify on a defense motion to dismiss because of prosecutorial misconduct. Obviously, this motion was denied by the trial judge.

■ Appellant points out that there is a vast difference between encouraging a witness to tell the truth, whatever the truth might be, and pressuring a witness by threats of prosecution, contempt, or some other penalty to give particular testimony which a judge or prosecutor believes is the truth. We agree that the latter is forbidden. *See Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *cf. United States v. Conway,* 42 C.M.R. 291 (CMA 1970); *United States v. Stoltz,* 34 C.M.R. 241 (CMA 1964).[6]

■ The government argues, on the other hand, that there is no *per se* rule which requires automatic reversal in such cases regardless of prejudice to the accused. *United States v. Teague,* 737 F.2d 378 (4th Cir.1984) *cert. denied,* 469 U.S. 1161, 105 S.Ct. 913, 83 L.Ed.2d 926 (1985). While there is some opposition to application of the harmless error rule in this situation, *see, e.g., United States v. Morrison,* 535 F.2d 223, 228 (3rd Cir.1976), we believe that the better course is to follow the principle,

enunciated by the United States Supreme Court in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), that "a federal constitutional error can be held harmless, [provided] the court [can] declare a belief that it was harmless beyond a reasonable doubt." To do so would mean, of course, that if appellant suffered no prejudice, it would be immaterial to the outcome of this appeal whether Darity was subjected to improper pressure.

■ The primary exceptions to this principle are grounded on a felt need to invoke the supervisory power of the appellate courts in order to preserve the fundamental integrity of the judicial system. While we believe that, as a *Court* of Military Review, we have such power, we are convinced that this situation is not a proper one in which to exercise it. Instances of prosecutorial folly such as the one we encounter here are rare in military practice. Military prosecutors are the product of a competitive selection process,[7] are carefully trained,[8] and are subject to a well-publicized and effectively operated professional responsibility program.[9] In our judgment, these measures are fully sufficient to protect the fundamental integrity of our judicial system from the effects of such practices. We turn, then, to the question of whether appellant was prejudiced by the prosecutor's actions.

The evidence heard by the trial judge on appellant's motion to dismiss included the

---

6. In some cases where witnesses have been pressured by threats of prosecution, a grant of testimonial immunity has been held to obviate the problem by removing the threat. *See Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. Villines,* 13 M.J. 46 (CMA 1982). Here, however, the alleged pressure consisted of a threat of prosecution for perjury. Because it contained an exception for perjury prosecution, the immunity granted to Darity would not, by itself, have removed such pressure.

7. For example, according to strength reports maintained in the Office of The Judge Advocate General (OTJAG), 1,010 applications for entry into The Judge Advocate General's Corps were received and considered during Fiscal Year (FY) 1983. Approximately 28% were offered com-

missions. The corresponding figures for FY 1984 were 836 and 49% and, for FY 1985, 815 and 61%. In addition, competition for prosecutorial positions is keen among active duty judge advocates.

8. We note that The Judge Advocate General's School offers extensive military justice training to new judge advocates during the Judge Advocate Officer Basic Course. Moreover, the Trial Counsel Assistance Program (TCAP) has been established in order to provide ongoing training and assistance to trial counsel in the field. *See* OTJAG Policy Letter 86–1, *reprinted in The Army Lawyer* at p. 6 (March 1986).

9. *See* paragraph 5–8, Dept. of Army Reg. No. 27–10 (10 December 1985).

following, which we find particularly significant to the question of prejudice:

(a) The trial counsel (who had been replaced because her testimony was required to help resolve the issue) testified, without objection, that Darity's counsel had told her that Darity had admitted lying at appellant's pretrial investigation. This was corroborated by Darity himself in the two exchanges discussed below, which took place during Darity's testimony on the defense motion.

(b) Appellant's trial defense counsel asked Darity whether he intended to change his testimony from that which he had given at appellant's pretrial investigation. Darity's response was, "I think that has already been done, sir. Me and [my counsel] discussed that."

(c) The following exchange took place between Darity and the trial judge:

Q: You apparently testified one way at [a pretrial investigation], is that right?

A: Right, sir.

Q: And you're apparently anticipating that you may testify somewhat differently than that if you're called as a witness at the trial, is that correct?

A: Yes, sir.

Q: And it's your intention, because you've received a letter from the convening authority ordering you to testify truthfully, that you're going to testify truthfully and that's the way it is. Is that correct?

A: Yes, sir.

The judge stated the issue presented by appellant's motion to dismiss, as he saw it, in the following terms:

The only thing I can be concerned about, by and large, is one of two things: One, has your witness been threatened to a degree which would deprive you of a truthful witness? And you have requested that I consider that and accept that and dismiss. The other one, if I don't dismiss, is that I do not let perjured

testimony come on if I can possibly avoid it.

■ Given this statement of the issue, the trial judge's denial of appellant's motion to dismiss and his refusal to grant any other relief can only be construed as an implicit finding that, at the time of appellant's trial, Darity was committed to testifying to the truth as he saw it. The evidence noted above certainly provides a sufficient basis for such a finding, and in fact has led us to the same conclusion.

As appellant himself points out, he was *not* entitled to a witness who persisted in a story which the witness believed to be false. Appellant was only entitled to a witness who would tell the truth as he saw it. The trial judge found, as do we, that Darity was such a witness. Even if it was improper pressure from a prosecutor which caused Darity to change his mind and tell the truth as *he* saw it, appellant has no cause for complaint, for he has received everything he had a right to receive.

In *United States v. Teague, supra,* the court found no prejudice because it was satisfied that the threatened witness had testified favorably to the appellant as to all matters about which he had testimonial knowledge. The other cases on the issue (which are reviewed and cited in *Teague* ) tend to turn on the outcome of a similar inquiry. In that respect, the case at bar appears to be unique. Here, based on the evidence adduced at the hearing held by the trial judge, we have been able to determine that the testimony which the threatened witness would have given was what the witness believed to be the truth. This has allowed us to refine the prejudice inquiry beyond the question whether the appellant was deprived of *favorable* testimony to the question whether he was deprived of *truthful* testimony.[10] As we have seen, the latter does not necessarily include the former, but is all the appellant is entitled to.

10. By "truthful" testimony, we mean, of course, testimony which conforms to the facts which the witness believes are true, not truth in the absolute or objective sense.

Consequently, we find that appellant suffered no prejudice from the trial counsel's actions and on that basis deny relief.

### III

 Based on the same evidence which was before the court in *United States v. Cruz*, 20 M.J. 873 (ACMR 1985), *pet. granted*, 22 M.J. 100 (CMA 1986), appellant seeks relief claiming unlawful command influence. As was the case in *Cruz*, we have no evidence indicating that the events in question had any prejudicial impact on appellant's case nor any evidence which creates an appearance of such an impact. Appellant has failed to raise the issue of unlawful command influence.

Appellate defense counsel have sought to attack the trial judge's impartiality and demeanor. We find these charges to be without merit.

Appellant contends that the specifications alleging possession of marijuana are multiplicious for findings purposes with the parallel specifications alleging distribution of marijuana. We agree. *United States v. Zubko*, 18 M.J. 378 (CMA 1984). Appellant has suffered no prejudice as to the findings or sentence.

We have considered the remaining issues briefed by appellate counsel and the matters addressed by appellant personally and find them to be without merit.

The findings of guilty of Specifications 1, 3, and 5 of the Charge are set aside and those specifications are dismissed. The remaining findings of guilty and the sentence are affirmed.

Judge FELDER concurs.

NAUGHTON, Judge, concurring:

I agree with parts I and III[1] of Senior Judge Wold's opinion. With respect to part II, I note that although I agree with the result reached by the majority I do not join in their characterization of the trial counsel's actions in cautioning a witness concerning perjury and the possible consequences thereof as "pressuring a witness by threats of prosecution" or as "prosecutorial folly." Undoubtedly, counsel must exercise great care in the means they choose in seeking to prevent perjury, as such occasions are fraught with danger, *see United States v. Teague*, 737 F.2d 378 (4th Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 913, 83 L.Ed.2d 926 (1985), and if such actions are unchecked they can lead to witness intimidation that deprives an accused of due process. I find that the trial counsel's actions in the case at bar were not intimidating, threatening, or harrassing.

---

1. While I may disagree with some of the holdings in *United States v. Cruz*, 20 M.J. 873, 894 (ACMR 1985) (en banc) (Naughton, J., dissenting), *pet. granted*, 22 M.J. 100 (CMA 1986), I am obligated to follow that decision with respect to the disposition reached by the majority regarding the unlawful command influence issue.