## ADAMS *v.* MARYLAND.

No. 271. Argued January 7, 1954.—Decided March 8, 1954.

*J. Francis Ford* and *George E. C. Hayes* argued the cause for petitioner. With them on the brief were *James A. Cobb* and *Joseph H. A. Rogan.*

*W. Giles Parker,* Assistant Attorney General of Maryland, argued the cause for respondent. With him on the brief were *Edward D. E. Rollins,* Attorney General, and *J. Edgar Harvey,* Deputy Attorney General.

MR. JUSTICE BLACK delivered the opinion of the Court.

In response to a summons the petitioner Adams appeared to testify before a Senate Committee investigating crime. Answering questions he confessed to having run a gambling business in Maryland. That confession has been used in this case to convict Adams of conspiring

to violate Maryland's antilottery laws. The trial court sentenced Adams to pay a fine of $2,000 and serve seven years in the state penitentiary. The Court of Appeals of Maryland affirmed, rejecting Adams' contention that use of the committee testimony against him was forbidden by a provision in a federal statute. 202 Md. 455, 97 A. 2d 281. That provision, now 18 U. S. C. § 3486, set out in full below, provides that no testimony given by a witness in congressional inquiries "shall be used as evidence in any criminal proceeding against him in any court . . . ."[1] The Maryland Court of Appeals held that Adams had testified before the Committee "voluntarily" and was therefore not protected by § 3486. We granted certiorari because a proper understanding of the scope of this Section is of importance to the national government, to the states and to witnesses summoned before congressional committees. 346 U. S. 864. In this Court Maryland contends that the Section does not bar use of Adams' testimony because: (1) He waived the statutory "privilege" by testifying "voluntarily," meaning that Adams failed to object to each committee question on the ground of its tendency to incriminate him; (2) the Section should be construed so as to apply to United States courts only. If these two statutory contentions are rejected, we are urged to hold that Congress is without constitutional power to bar the use of congressional committee testimony in state courts.

(1) Circumstances may be conceivable under which statements made in the presence of a congressional com-

---

[1] "No testimony given by a witness before either House, or before any committee of either House, or before any joint committee established by a joint or concurrent resolution of the two Houses of Congress, shall be used as evidence in any criminal proceeding against him in any court, except in a prosecution for perjury committed in giving such testimony. But an official paper or record produced by him is not within the said privilege." 11 Stat. 156, 12 Stat. 333, 52 Stat. 943, 62 Stat. 833, 18 U. S. C. § 3486.

mittee might not be protected by § 3486. For example, a person might voluntarily appear and obtain permission to make a statement in a committee's presence, wholly for his own advantage, and without ever being questioned by the committee at all. But Adams did not testify before the Senate Committee under any such circumstances. He was not a volunteer. He was summoned. Had he not appeared he could have been fined and sent to jail. 2 U. S. C. § 192. Nor does the record show any spontaneous outpouring of testimony from him. The testimony Maryland used to convict him was brought out by repeated committee questions. It is true that Adams did not attempt to escape answering these questions by claiming a constitutional privilege to refuse to incriminate himself. But no language of the Act requires such a claim in order for a witness to feel secure that his testimony will not be used to convict him of crime. Indeed, a witness does not need any statute to protect him from the use of self-incriminating testimony he is compelled to give over his objection. The Fifth Amendment takes care of that without a statute. Consequently, the construction of § 3486 here urged would limit its protection to that already afforded by the Fifth Amendment, leaving the Section with no effect whatever. We reject the contention that Adams' failure to claim a constitutional privilege deprived him of the statutory protection of § 3486.

(2) Nor can we hold that the Act bars use of committee testimony in United States courts but not in state courts. The Act forbids use of such evidence "in any criminal proceeding . . . in any court." Language could be no plainer. Even if there could be legislative history sufficiently strong to make "any court" mean United States courts only, there is no such history. The few scraps of legislative history pointed out tend to indicate that Congress was well aware that an ordinary person

would read the phrase "in any court" to include state courts. To construe this phrase as having any other meaning would make the Act a trap for the unwary.

It is suggested, however, that regardless of the plain meaning of § 3486 as originally passed an event since its passage should cause us to give it an entirely different meaning. The Section stems from an 1857 Act of Congress designed to grant committee witnesses immunity from prosecution in order to compel them to give self-incriminating testimony despite the Fifth Amendment.[2] Thirty-five years later in *Counselman* v. *Hitchcock,* 142 U. S. 547, this Court held that an act not providing "complete" immunity from prosecution was not broad enough to permit a federal grand jury to compel witnesses to give incriminating testimony. Section 3486 does not provide "complete" immunity. The original purpose of Congress to compel incriminating testimony has thus been frustrated.[3] It is argued that Congress could not have intended to afford any immunity to criminals unless it was thereby enabled to compel them to testify about their crimes. Therefore, it is said, § 3486 should now be given the narrowest possible construction—made effective only when the Fifth Amendment privilege is claimed, and held applicable only to United States courts. Because Congress did not get all it hoped, we are urged to deny witnesses the protection the statute promises. But a court decision subsequent to an act's passage does not usually alter its original meaning. And we reject the implication that a general act of Congress is like a private contract which courts should nullify upon a showing of partial or total failure of consideration. Moreover, Congress has kept the statute in force more than sixty years since the *Counselman* decision. And in 1938 Congress

---

[2] Act of Jan. 24, 1857, 11 Stat. 156.

[3] See *United States* v. *Bryan,* 339 U. S. 323, 335–337.

reenacted the statute making changes deemed desirable to insure its continued usefulness. 52 Stat. 943. Our holding is that *Counselman* v. *Hitchcock* in no way impairs the protection afforded congressional witnesses by § 3486.

(3) Little need be said about the contention that Congress lacks power to bar state courts from convicting a person for crime on the basis of evidence he has given to help the national legislative bodies carry on their governmental functions. Congress has power to summon witnesses before either House or before their committees. *McGrain* v. *Daugherty,* 273 U. S. 135. Article I of the Constitution permits Congress to pass laws "necessary and proper" to carry into effect its power to get testimony. We are unable to say that the means Congress has here adopted to induce witnesses to testify is not "appropriate" and "plainly adapted to that end." *McCulloch* v. *Maryland,* 4 Wheat. 316, 421. And, since Congress in the legitimate exercise of its powers enacts "the supreme Law of the Land," state courts are bound by § 3486, even though it affects their rules of practice. *Brown* v. *Walker,* 161 U. S. 591, 606–608. Cf. *Testa* v. *Katt,* 330 U. S. 386.

The judgment of the Maryland Court of Appeals affirming this conviction is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Frankfurter concurs in the result.

Mr. Justice Jackson, concurring.

I am in substantial agreement with the Court's opinion but differ in emphasis.

The only controlling fact for me is that this Act is on the federal statute books. What someone intended almost a century ago when it was passed, or in the 1890's when *Counselman* v. *Hitchcock,* 142 U. S. 547, was de-

cided, I do not know. Since the last event, some thirty Congresses have come and gone, something near 15,000 Congressmen have been elected, not allowing for re-election. How many of them knew of *Counselman* v. *Hitchcock,* how many felt frustrated by it, and how many would have vented their frustration by repeal, I do not know or care. Congress left the Act on the books, and it was there when this petitioner testified. The only question is what it would mean to a reasonably well-informed lawyer reading it.

I do not think it important whether petitioner was a "voluntary" or "involuntary" witness before the congressional Committee or whether he raised the question of his immunity under the Fifth Amendment. No such qualification appears in the Act. The whole object and usefulness of the statute is to relieve the witness of the risks which might induce him to withhold testimony from Congress. It is very customary for one who is asked for information to appear before a committee without requiring the formality of a subpoena. The Act does not strip one of its protection because he may be a cooperative, or even interested, witness; indeed, its purpose is to protect and thereby encourage cooperation instead of hesitation or resistance.

The statute seems as unambiguous as language can be. If words mean anything, the statute extends its protection to all witnesses, to all testimony, and in all courts. It is easy to see, as this case illustrates, the hazard a witness would run otherwise. A lawyer would be warranted from the face of this Act in advising the witness that he had nothing to fear from frank and complete disclosure to Congress. Thus the Act would have accomplished its obvious purpose of facilitating disclosure.

I cannot see the slightest doubt that Congress has power to enact the statute for that purpose. It does not take anything from Maryland. It does not say Mary-

land cannot prosecute petitioner; it just says she shall not put him to disadvantage on the trial by reason of his cooperation with Congress. It leaves Maryland with complete freedom to prosecute—she just has to work up her own evidence and cannot use that worked up by Congress. The protection to the witness does not extend beyond the testimony actually received. In this case, petitioner was convicted by the State on the admissions he made before the Senate Committee. Section 3486 was thereby violated, and the conviction should be reversed.