James FOWLER, Plaintiff,

v.

Leon J. VINCENT, Superintendent of Green Haven Correctional Facility, et al., Defendants.

No. 72 Civ. 4759.

United States District Court, S. D. New York.

Nov. 19, 1973.

Jethro M. Eisenstein, Richard Blaker, Law Student, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., State of New York (David H. Berman, Asst. Atty. Gen., of counsel), for defendants.

BAUMAN, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 and its jurisdictional complement, 28 U.S.C. § 1343(3). At the time of the filing of the complaint plaintiff, James Fowler, was incarcerated in the Green Haven Correctional Facility, serving a sentence·of seven years imposed on December 4, 1968 in the Supreme Court, New York County. He seeks damages of $300,000 from each of the three defendants as well as an injunction against any possible criminal prosecution arising out of the events set forth in the complaint. Before the court is the motion of the Attorney General, representing all three defendants, to dismiss pursuant to Rule 12(b)6 of the Federal Rules. For the reasons that follow, the motion is granted in part and denied in part.

The allegations of the complaint, which, for the purposes of this motion must be taken as true, can be briefly stated. On August 6, 1972 plaintiff was returning to the cell block where he resided following a visit from his family. After an innocuous exchange with a gate officer plaintiff became the subject of several abusive remarks by defendant Powers, another officer. Powers first grabbed plaintiff's "visit pass" and then struck him from behind. A scuffle ensued in which Powers was apparently aided by another officer, which continued until inmates and yet another officer separated the men. Powers reported the incident to the prison authorities, and plaintiff was taken to the prison hospital where he was treated for injuries to the head and cuts on his left arm and hand. Fowler was placed in segregation immediately thereafter.

On August 8 plaintiff was taken before a staff sergeant of the prison and a representative of the State Bureau of Criminal Investigation. He was told that Powers was charging him with criminal assault and asked if he wished to make any statements. Fowler said nothing other than to request counsel. Two days later a non-lawyer staff sergeant was assigned to represent him in the administrative proceedings within the prison.

A so-called "Superintendent's hearing" was conducted on August 11 by the deputy superintendent of Green Haven. At that time plaintiff pleaded not guilty to the assault charge and again requested counsel. The request was again denied and Fowler was informed that the charge would require a lengthy investigation.

August 22 was the date on which the Parole Board had previously decided plaintiff was to have been released. However, on the 21st he was informed by his parole officer that instead of being released on the 22 he was to appear before the Parole Board on that day. He appeared instead before a "Superintendent's hearing", this time convened by a Captain Zelinski, who informed him that he had been found guilty of the charges and was sentenced to thirty days' loss of good time and thirty days' confinement in segregation.

On August 23 plaintiff did appear before the Parole Board, where he once again renewed his request for counsel. In response to his inquiry about a release date the Board told him that an explanation of the events of August 6 would be in his interest. Fowler proceeded to relate his version of the incident.

On August 27 he was notified that the Board had rescinded his August 22 release date and had ordered him to appear before them at their October session.

Plaintiff appeared before a grand jury of Dutchess County on September 12, at which time he was questioned regarding the incident of August 6. He was informed in early October by an attorney from the NAACP Legal Defense Fund who had endeavored to represent him in these matters that the Assistant District Attorney was offering him a plea of guilty to assault in the third degree and would not recommend additional jail time to the sentencing judge. The complaint is thereafter silent on this point and, so far as appears from the papers before me, plaintiff refused the bargain and the matter is thus still pending before the grand jury. Plaintiff was, however, conditionally released from Green Haven on November 10, 1972.[1]

The complaint sets forth three causes of action. In the first Fowler claims that defendant Powers deprived him of the right to due process secured by the Fourteenth Amendment by assaulting him. In the second he accuses defendant Vincent, the superintendent of Green Haven, with violations of various of his constitutional rights. In essence, however, he alleges that the simultaneity of an administrative proceeding and a grand jury investigation, and the consequent pressure to defend himself in the one and avoid self-incrimination in the other, violated the right against self-incrimination secured by the Fifth Amendment. Plaintiff also alleges that his Sixth Amendment rights were violated by the prison's refusing him counsel while conducting disciplinary proceedings. In the third cause of action he accuses defendant Grady, the Assistant District Attorney in Dutchess County, of depriving him of his right to due process. He therefore seeks damages against Grady and an injunction against further criminal prosecution. Although the state has moved to dismiss all three causes of action, I conclude that it has prevailed only upon the third.

## I.

In seeking to dismiss the first cause of action, the Attorney General asserts that prisoner-guard disputes are no concern of the federal courts. Wright v. McMann, 387 F.2d 519 (2d Cir. 1967). That proposition is unimpeachable, but of little use here. It overlooks the more recent case of Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), cert. denied, —— U.S. ——, 94 S. Ct. 462, 38 L.Ed.2d 324 (1973), in which our Court of Appeals held, in circumstances quite similar to those of the case at bar, that "application of undue force by law enforcement officers deprives a suspect of liberty without due process of law." While conceding that "not every push or shove" was a matter of federal cognizance, the court stated: "[i]n determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

---

1. The principal difference between parole and conditional release is that upon his return to prison, one who violates parole is given credit on his sentence for the time spent on parole prior to the violation. Time spent under conditional release, however, is not credited against the sentence in the event of a violation. New York Penal Law § 70.40, McKinney's Consol.Laws, c. 40. See also United States ex rel. McGill v. Schubin, 475 F.2d 1257 (2nd Cir. 1973).

the very purpose of causing harm." 481 F.2d at 1033. See also Allison v. California Adult Authority, 419 F.2d 822 (9th Cir. 1969); Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969); Collum v. Butler, 421 F.2d 1257 (7th Cir. 1970); Howell v. Cataldi, 464 F.2d 272 (3rd Cir. 1972); Tolbert v. Bragan, 451 F.2d 1020 (5th Cir. 1971). Given that standard, I am satisfied that the complaint states a cause of action against the defendant Powers. A fair reading of the complaint would suggest that defendant's assault was unprovoked, excessive, and undertaken solely for the purpose of inflicting harm. These allegations, if proven, would entitle plaintiff to relief under 42 U.S.C. § 1983.

## II.

With regard to the second cause of action, the Attorney General defines the issue merely as whether a prisoner is entitled to counsel in prison disciplinary proceedings. Since Sostre v. McGinnis, 442 F.2d 178 (2nd Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 and 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972), the law in this circuit is clear that he is not. That does not end our inquiry, however, for the allegations in the second cause of action are slightly more complex than defendants have portrayed them. Fowler objects to the deprivation of counsel at disciplinary proceedings while the state was simultaneously undertaking an investigation of criminal charges against him. He thus raises a serious problem, far graver than the defendant's cursory discussion would suggest.

The dilemma facing a prisoner in Fowler's situation was first recognized by Judge Zirpoli in the seminal case of Cluchette v. Procunier, 328 F.Supp. 767 (N.D.Cal.1971). Cluchette was confronted with a problem identical to Fowler's, except that he was given Miranda[2] warnings, as is required by California law. The court analyzed the situation thus: "[t]he prisoner, warned that anything he says may be used against him in a criminal prosecution, is put to the choice between remaining silent and sacrificing his right to defend himself before the [disciplinary] committee, or speaking to the committee and risking incriminating himself in a future prosecution. The trap is unavoidable." 328 F.Supp. at 778. The court concluded that this dilemma could only be resolved by affording a prisoner counsel whenever he is charged with a prison rule violation which might also be the subject of criminal prosecution.

Although other courts have accepted Judge Zirpoli's definition of the problem, they have rejected his solution as both excessive and ultimately ineffective. As the court in Sands v. Wainwright, 357 F.Supp. 1062 (M.D.Fla. 1973), stated: "[o]bviously, counsel's assistance would enable an inmate to utilize more effectively his rights. However, when the time comes at the hearing for the inmate proceeded against to make a statement, the assistance of counsel cannot vitiate the constitutionally obnoxious dilemma: it is then still as substantial as if the attorney were not there." 357 F.Supp. at 1093.

▮ The court in *Sands* concluded that the only effective resolution of the problem is the device of use immunity; that is, any statements made by a prisoner at a disciplinary proceeding could not be used affirmatively against him in a subsequent criminal prosecution.[3] I agree with this analysis. The conferring of use immunity under these circumstances is consistent with, if not mandated by the Supreme Court decisions commencing with Garrity v. New

---

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. See also Carter v. McGinnis, 351 F.Supp. 787 (W.D.N.Y.1972), which acknowledges

the utility of use immunity but stops short of prescribing it.

Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L. Ed.2d 562 (1967), discussed below. It is preferable to any system of mandatory assignment of counsel because it fully protects the prisoner's right against self-incrimination and yet permits the prison disciplinary system to retain a speed and flexibility which should not be encumbered by excessive procedural formality. See Sostre v. McGinnis, supra, 442 F.2d at 194–199. I therefore conclude that a prisoner who faces both intramural disciplinary proceedings and criminal prosecution must be informed by the prison disciplinary authority that use immunity will protect all statements relevant to the proceedings from subsequent use in any coordinate criminal prosecution.

■ This conclusion would seem to me to be compelled by the line of cases commencing with Garrity v. New Jersey, supra, although I recognize that they relate to the privilege against self-incrimination as applied to government employees. The appellants in *Garrity* were police officers subject to a criminal investigation who were told that they had the right to refuse to answer questions but, as state law mandated, that they would forfeit their office if they invoked the right. The Supreme Court stated that statements made under the threat of forfeiture of one's livelihood could not be deemed voluntary, and thus held that they could not be used at a criminal trial. The teaching of *Garrity*, as well as its progeny, is that the Fifth Amendment will imply a grant of use immunity upon a person faced with a choice between self-incrimination and the relinquishment of a fundamental interest. See Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247

(1968); Melson v. Sard, 131 U.S.App. D.C. 102, 402 F.2d 653 (1968).

■ In Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation, 426 F.2d 619, at 626 (2nd Cir. 1970), Judge Friendly appears to suggest that the loss of liberty presents an even stronger compulsion than loss of employment, and thus the need for immunity may be correspondingly greater.[4] I wholeheartedly concur in this observation, and I thus conclude that the reasoning of *Garrity* applies *a fortiori* to the case at bar. The disciplinary proceeding here in question was thus constitutionally defective in its failure to advise Fowler of the nature and extent of the use immunity available to him. I therefore conclude that the complaint does state a claim against defendant Vincent, and the motion to dismiss the second cause of action is accordingly denied.

### III.

■ In seeking to dismiss the third cause of action the Attorney General is on firmer ground. It is now well settled that prosecutors are immune from suit under 42 U.S.C. § 1983 for acts committed in their official capacity. Dacey v. New York County Lawyers' Association, 423 F.2d 188 (2nd Cir. 1969), cert. denied, 398 U.S. 929, 90 S.Ct. 1819, 26 L. Ed.2d 92 (1970); Fanale v. Sheehy, 385 F.2d 866 (2nd Cir. 1967); Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966); Palermo v. Rockefeller, 323 F.Supp. 478 (S.D.N.Y.1971). The claim for damages against defendant Grady is therefore dismissed.

■ Nor can the action for injunctive relief against the criminal prosecution be sustained. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669

4. In *Uniformed Sanitation Men*, the court also noted that use immunity can be conferred upon a witness even in the absence of a state statute. In *Garrity*, for example, immunity was found to have been conferred by the attorney general's act of informing the witness that he would be subject to removal if he refused to answer. See Adams v. Maryland, 347 U.S. 179, at 181, 74 S.Ct. 442, 98 L.Ed. 608 (1954).

(1971), established stringent standards for the exercise of federal injunctive relief against state criminal prosecutions and this plaintiff has not met them. First, the state proceeding must threaten "irreparable injury", which must furthermore be "both great and immediate". The Court emphasized that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" did not constitute such injury. Rather, "the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." 401 U.S. at 46, 91 S.Ct. at 751. It also appears that absent some unspecified "unusual circumstance", the party seeking the injunction must establish that the criminal proceeding was brought in bad faith and for the purpose of harassment. See also Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908); Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926).

■ Nothing in the facts alleged in the instant complaint meets the *Younger* test. There is no suggestion of bad faith on the part of the prosecution, nor is plaintiff being threatened by a criminal statute of dubious constitutionality. Should an indictment be returned (and it must be observed that the District Attorney has pursued this matter with something less than unflagging zeal) and should the state seek to introduce any of plaintiff's statements made before the Parole Board or· Superintendent's Hearing, plaintiff's rights can be fully protected by a motion to suppress. The application for an injunction is thus wholly inappropriate, and the third cause of action is accordingly dismissed.

In sum, defendants' motion to dismiss the complaint is denied with respect to the first and second causes of action, and granted with respect to the third. The complaint is thus dismissed as against defendant Grady, but survives as against defendants Powers and Vincent.

It is so ordered.