emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

   Further, the Commissioners cannot succeed on their claim that to uphold this standard would require them to approve every application which had no opposition. All that is required under the statute is that substantial evidence support any denial of construction of wireless facilities. PSC made no statement anywhere in their order that Telespectrum had failed to properly certify its application, and cannot rest on such an argument now. Absent any further evidence, and in light of Telespectrum's evidence that other sites were less suitable and that the Chambers' concerns were not based on fact, we affirm the district court's determination that PSC's Order was not based on substantial evidence.

   We therefore conclude that the district court had proper jurisdiction over this complaint, that the court did not err by determining that PSC's decision was unsupported by substantial evidence and affirm the order of the district court granting judgment for Telespectrum.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0306P (6th Cir.)
File Name: 00a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

TELESPECTRUM, INC.,
          *Plaintiff-Appellee,*

          *v.*

PUBLIC SERVICE COMMISSION OF KENTUCKY; BRENDA J. HELTON, in her official capacity as Chairman and Commisioner of the Public Service of Kentucky; EDWARD J. HOLMES, in his official capacity as Vice-Chairman and Commissioner of the Public Service Commission of Kentucky; GARY W. GILLIS, in his official capacity as Commissioner of the Public Service Commission of Kentucky (99-5822); DONALD R. CHAMBERS; CONNIE CHAMBERS (99-5871/5919),
          *Defendants-Appellants.*

Nos. 99-5822/ 5871/5919

1

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
Nos. 98-00062—Joseph M. Hood, District Judge.

Argued:  June 23, 2000

Decided and Filed:  September 8, 2000

Before:  SILER and CLAY, Circuit Judges; STAFFORD,
District Judge.[*]

_____

**COUNSEL**

**ARGUED:**    Amy  E.  Dougherty,  PUBLIC  SERVICE
COMMISSION,  OFFICE  OF  GENERAL  COUNSEL,
Frankfort, Kentucky, for Appellants.  Mark R. Overstreet,
STITES & HARBISON, Frankfort, Kentucky, for Appellee.
**ON BRIEF:**  Amy E. Dougherty, Deborah T. Eversole,
PUBLIC SERVICE COMMISSION, OFFICE OF GENERAL
COUNSEL, Frankfort, Kentucky, for Appellants.  Mark R.
Overstreet, STITES & HARBISON, Frankfort, Kentucky, for
Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge.  Defendants Commissioner Brenda
J.  Helton,  Commissioner  Edward  J.  Holmes,  and
Commissioner  Gary  W.  Gillis  of  the  Public  Service
Commission of Kentucky appeal the orders of the United
States District Court for the Eastern District of Kentucky
granting summary judgment for Plaintiff Telespectrum, Inc.,

_____

[*]    The Honorable William Stafford, Senior United States District Judge
for the Northern District of Florida, sitting by designation.

*Universal Camera v. NLRB*, 340 U.S. 474, 477 (1951)).  This
Court reviews the entire record, including evidence opposed
to the result of the decision.  *See American Textile Mfg. Inst.,
Inc.  v.  Donovan*, 452 U.S. 490, 523 (1981).  We look to
whether the agency explained any credibility judgments it
made and whether it gave reasons for crediting one piece of
evidence over another.  *See Peabody Coal Co. v. Hill*, 123
F.3d 412, 415 (6th Cir. 1997).  This Court must examine the
evidence as a whole, taking into account whatever in the
record fairly detracts from its weight.  *See Wyatt v. Secretary
of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir.
1992).

We  find  that  the  Commissioners'  decision  to  deny
Telespectrum's application rested on the testimony and letter
of Mr. and Mrs. Chambers.  Because the Mayor did not testify
at the hearing, the only record evidence in opposition to the
Globe site was the Chambers' concerns that they would be
exposed to harmful emissions and that their property value
would  diminish.    While  the  Chambers  may  have  been
credible, sympathetic witnesses, we find that their testimony
was  no  more  than  unsupported  opinion  that  there  were
alternate sites available. *See Town of Amherst*, 173 F.3d at 16
("In  a  number  of  cases,  courts  have  overturned  denials  of
permits,  finding  (for  example)  that  safety  concerns  and
aesthetic objections rested on hollow generalities and empty
records."); *Sprintcom, Inc. v. Village of Mundelein*, 1999 WL
652032 at *6 (N.D. Ill., August 20, 1999) (stating that the
"mere  allegation  that  other  sites  were  available . . . is  not
substantial  evidence."); *Iowa Wireless Services v. City of
Moline*, 29 F. Supp.2d 915, 922 (C.D.Ill. 1998) ("A number
of  district  courts  have  held  that  the  generalized  concerns  of
citizens  are  insufficient  to  rise  to  the  level  of  substantial
evidence.").    In  any  event, we recognize that concerns of
health  risks  due  to  the  emissions  may  not  constitute
substantial evidence in support of denial by statutory rule, as
no state or local government or instrumentality thereof may
regulate the construction of personal wireless facilities "on
the  basis  of  the  environmental  effects  of  radio  frequency

orders less than final." *Bell v. New Jersey*, 461 U.S. 773, 779 (1983). Where, as here, the order has the "direct and immediate" effect of denying Telespectrum permission to construct a tower, clearly an impact on Telespectrum's "day-to-day business," this Court should not infer a non-final meaning to the otherwise plain language of the order. *See Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992). Absent any evidence in the order that it was intended to be temporary or intermediate, we conclude that the PSC order of June 25, 1998, was indeed a final order under Section 332.

Under 47 U.S.C. § 332(c)(7)(B), a decision to deny a request to construct "personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The Third Circuit has observed that "section 332(c)(7) 'is a deliberate compromise between two competing aims – to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers.'" *Omnipoint Corp., Inc. v. Zoning Hearing Bd.*, 181 F.3d 403, 407 (3d Cir. 1999) (*quoting Town of Amherst v. Omnipoint Comm. Enters., Inc.*, 173 F.3d 9, 13 (1st Cir. 1999)).

Other courts have concluded that the "substantial evidence" standard of section 332 is the traditional standard employed by the courts for review of agency action. *See Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 493-94 (2d Cir. 1999); *Omnipoint Corp.*, 181 F.3d at 407-08; *AT&T Wireless PCS v. Winston Salem Zoning Bd.*, 172 F.3d 307, 313-14 (4th Cir. 1999); *Aegerter v. City of Delafield*, 174 F.3d 886, 889 (7th Cir. 1999). The legislative history reflects this as well, saying that "[t]he phrase, 'substantial evidence contained in the written record' is the traditional standard used for judicial review of agency actions." H.R. Conf. Rep. No. 104-458 (1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Cellular Tel. Co.*, 166 F.3d at 494 (*quoting*

in its action for injunctive relief to permit construction of a cellular communications tower. For the following reasons, we **AFFIRM**.

## I.

On September 25, 1997, Telespectrum applied to the Public Service Commission of Kentucky ("PSC") for a Certificate of Public Convenience and Necessity to construct a 199 foot tall wireless telecommunications tower in Carter County, Kentucky. The proposed site for the tower ("the Globe site") is in a rural area not subject to local zoning or other land use requirements. The site is heavily wooded, though the predominant land use along both sides of the adjacent road is agricultural. The only existing development on the south side of the road consists of four single family residences, all located more than one thousand feet from the site. Within one thousand feet of the site are the remains of a burned-out single family residence, a yard containing ten to twelve automobiles in varying states of disrepair, a home built around a manufactured house and surrounded by tires and debris, and the single family ranch home of Mr. and Mrs. Donald Chambers. The Chambers' home is below the grade of the road and approximately 412 feet from the proposed site for the tower.

Telespectrum identified the Globe site from field measurements and a computer modeling program. Using measurements of signal strength, a search firm determined seven possible locations within the area which could provide adequate cellular coverage to the community. Telespectrum states that it identified seven possible sites but later discarded four of them because they were unavailable. Telespectrum determined, based on further modeling, investigation and geographic information, that two of the remaining three sites would not be appropriate. In contrast, Telespectrum's investigation into the Globe site concluded that a tower at this location would provide the best signal quality and coverage for the area which was otherwise without wireless

communications.  Telespectrum arranged to lease the Globe site from the landowners, Donald and Mary Bond.

As part of the PSC application process, Telespectrum received permits from the Federal Aviation Administration and the Kentucky Airport Zoning Commission to build at the Globe Site.  Additionally, Telespectrum included with its application a geotechnical report, a Phase 1 archeological survey, a land survey, a site plan, and plans and engineering calculations for the tower and its foundations.

On October 7, 1997, Mr. and Mrs. Donald Chambers informed PSC that they objected to the construction of the Globe Site, basing their complaint on "health dangers from being exposed to microwaves emitted from the tower," and "decrease in our property value." (J. A. 192).  PSC granted the Chambers full intervention into the application process.

On March 7, 1998, the Mayor of Olive Hill wrote to oppose the application based on the city's recent acquisition of land in the area for preservation purposes.  His letter did not identify with particularity the location of the city's parcel, nor did the Mayor choose to intervene or to speak in opposition to the application at the hearing; the letter was not introduced into evidence at the hearing.

On April 2, 1998, PSC conducted a public hearing on Telespectrum's application.   Telespectrum presented testimony by a real estate specialist and an engineer, who spoke about the need for a cellular site in the area, the process by which the Globe site was located, and stated that based on their investigations and experience in siting more than 300 other towers each, there were no other sites available to provide the required coverage.  Telespectrum also introduced a Map Data Information Sheet prepared by the Kentucky State Nature Preserves Commission which demonstrated that the town of Olive Hill's parcel was located on the opposite side of Olive Hill from the Globe site, several miles away.  Donald Chambers was the sole witness to testify in opposition to the

(6th Cir. 1999) (finding that monetary damages are the archetype of retroactive relief but that "compliance in the future" is prospective and denying the true party in interest argument).

Because we conclude that the district court properly found that the *Ex parte Young* doctrine should apply and that the federal courts have proper jurisdiction over this claim, we affirm on this issue.

### III.

We turn to Commissioners' claim that the district court incorrectly determined that PSC's decision was not supported by substantial evidence.

We note first that the Commissioners' argument that PSC's order of June 25, 1998, did not constitute a "Final Action," as required by 47 U.S.C. § 332(c)(7)(B)(v), is not supported by the language of the order.  The order states that "[t]he Commission . . . finds that the public convenience and necessity is not served by granting this certificate." (J. A. 206).  We find nothing in this language signaling that the order is an interim one; rather, it seems to clearly state that the order is a denial of a certificate to build the tower.  While the order states further that "[i]t is ordered that Telespectrum should continue this case and seek other locations for the Globe site," we find reliance on the use of the word "continue" to be unpersuasive in light of the above quoted language and the requirement that Telespectrum "seek other locations."  *Id.*  The order contains no language which indicates that PSC will hear further evidence as to the Globe site or that the order will be reopened if other sites are unacceptable.  Under existing law, an "agency action may be final even when the challenged decision is not the last step the agency will take in the case."  5 J. Stein, G. Mitchell, B. Mezines, *Administrative Law*, § 48.03 at 48-49 (1998).  "The possibility of further proceedings in the agency to determine the method of repayment does not, in our view, render the

federal jurisdiction); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (concluding that the federal district courts are "fully capable" of deciding "routine issues of state law.").

We note for the sake of complete analysis that the Commissioners' claims that application of *Ex parte Young* here would improperly violate the discretion of the state officers must fail. As the Supreme Court stated in that case, "[a]n injunction to prevent [the state official] from doing that which he has no legal right to do is not an interference with the discretion of an officer." *Ex parte Young*, 209 U.S. at 159; *see Elephant Butte Irrigation Dist. v. Department of Interior*, 160 F.3d 602, 611 (10th Cir. 1998) ("*Ex parte Young* does not extend this general rule to preclude judicial review of discretionary acts that violate federal law.").

Similarly, the Commissioners' argument that application of *Ex parte Young* to this situation would result in a member of a commission dissenting from a decision and then being named as a defendant in an action under *Ex parte Young* is unpersuasive in light of this Court's determination in *Michigan Bell* that an *Ex parte Young* action was proper even though one of the defendant commissioners had previously dissented. 202 F.3d at 864. Nor is it the case that Commissioners can claim exception from *Ex parte Young* by arguing they acted within their discretion as granted by the state, as the Supreme Court has said that "the state has no power to impart to . . . [state officials] any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. at 159. In the same light, Commissioners' arguments that they are improper parties because they can act only as a corporate body, that Telespectrum is not seeking prospective relief, and that the Commonwealth of Kentucky is the real party in interest have been consistently rejected by the courts. *See, e.g., Michigan Bell*, 202 F.3d at 868 (maintaining under *Ex parte Young* an action against the individual members of the Michigan Public Service Commission); *Nelson v. Miller*, 10 F.3d 641, 646-47

application, stating his personal belief that the electromagnetic emissions from the towers might have adverse health effects and that the value of his home would diminish if the tower was built on the Globe site. Chambers also testified that he believed the tower could be located at four sites other than the Globe site, showing photographs he had taken from his car as evidence. Chambers did not introduce any other support for this statement.

In response, Telespectrum introduced testimony from a licensed appraiser who stated that after investigating the Globe site and surrounding environs, and in concert with a study on the effect towers had on surrounding property at five comparable locations, he had concluded that the presence of the tower would not affect the market value of the Chambers' home. Telespectrum also introduced the affidavit of another engineer who stated that exposure to the emissions from the tower would not be harmful.

The Commissioners entered their order denying Telespectrum's application on June 25, 1998. The order stated:

At the hearing, Mr. Chambers raised objections to the tower being located adjacent to his property and home. Mr. Chambers further produced multiple possible tower sites on the Lessor's property. The Commission is aware that cell site construction is exempt from local zoning ordinances. Therefore, in considering the public interest with regard to certificates of Public Convenience and Necessity, it cannot decline to be cognizant of and sensitive to the concerns of residents and landowners whose property is affected.

The Commission, having considered the evidence of record and balancing the interests of the applicant against the interest of the intervenor, finds that the public convenience and necessity is not served by granting this certificate.

IT IS THEREFORE ORDERED that Telespectrum should continue this case and seek other locations for the Globe site.

(J. A. 205-06)

Telespectrum filed an action in the United States District Court for the Eastern District of Kentucky, requesting mandamus or in the alternative, declaratory or injunctive relief, against the Public Service Commission of Kentucky, and Donald and Connie Chambers, intervenors in the underlying PSC proceeding. PSC moved for dismissal, arguing that the court lacked subject matter jurisdiction because the June 25, 1998, order of PSC was not final pursuant to 47 U.S.C. § 332(c)(7)(B), and claiming Eleventh Amendment immunity as an arm of the state. Telespectrum moved to amend its complaint to name the three members of PSC, Brenda J. Helton, Edward J. Holmes and Gary W. Gillis ("Commissioners"), as additional defendants. The district court granted Telespectrum's motion, and also granted PSC's motion to dismiss in part, finding that the Eleventh Amendment barred action against PSC, but permitted action against the Commissioners.

The district court granted summary judgment to Telespectrum, reversing PSC's original order and ordering PSC to issue Telespectrum a Certificate of Public Convenience and Necessity. *See Telespectrum, Inc. v. Public Service Com'n of Kentucky*, 43 F.Supp.2d 755 (E.D.Ky. 1999). Commissioners filed a motion to alter or amend the judgment which was denied and they appealed to this Court.

## II.

This Court reviews the grant of summary judgment *de novo*. *See Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999). Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

courts have construed similar phrases to encompass both state and federal courts. In *Adams v. Maryland*, 347 U.S. 179, 181-82 (1954), the Supreme Court determined that the phrase "any court" could not be interpreted to mean solely the federal courts. "Congress was well aware that an ordinary person would read the phrase 'in any court' to include state courts. To construe this phrase as having any other meaning would make the Act a trap for the unwary." *Id*; *accord Collector v. Hubbard*, 79 U.S. 1, 12-15 (1870), *overruled on other grounds by Eisner v. Macomber*, 252 U.S. 189 (1920) (noting that the phrase "any court . . . includes both state and federal courts."). The Fourth Circuit has similarly held that the phrase "in any court of competent jurisdiction" includes federal courts. *See James Freeman Brown Co. v. Harris*, 139 F. 105, 108 (4th Cir. 1920).

Commissioners do not provide support for their argument that here "any court of competent jurisdiction" must mean only state courts since Congress did not expressly preempt all state regulation governing the siting of wireless facilities. We find that Commissioners fail to account for the substantial body of law which provides for concurrent state and federal jurisdiction or exclusive federal jurisdiction while incorporating or preserving state law. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 99 (1980) (finding that Section 1983 actions may be brought in either state or federal court even though state law defines the existence and dimension of property interests provided by due process and the applicable statute of limitations); 47 U.S.C. § 252(e)(4) (providing for exclusive federal jurisdiction to consider appeals from state orders approving interconnection agreements despite the preservation of state authority to establish other requirements of state law in review of an agreement under 47 U.S.C. § 252(e)(3)). Similarly, we note that Commissioners' argument contains an unconvincing premise, as several courts have recognized that federal courts regularly determine many state law issues. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983) (finding that it is rare for the existence of state law issues to compel a finding of lack of

or any instrumentality thereof" in the language of the statutory section. 47 U.S.C. § 332(c)(7)(B)(v). They assert that Telespectrum's action amounts to a request for judicial creation of a remedy.

We are unpersuaded. The statute does not name or otherwise limit the appropriate defendants in an action under 47 U.S.C. § 332(c)(7)(B). This Court "must presume that a legislature says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *accord Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999). This Court may not amend or add to the plain language of a statute. *See Bartlik v. United States Dep't of Labor*, 62 F.3d 163, 166 (6th Cir. 1995) ("When we can discern an unambiguous and plain meaning from the language of the statute, our task is at an end."). Since the statutory language does not require that the only proper defendants are that State, local government, or instrumentality thereof which acted inconsistently with the other provisions of the section, we find that inserting such a clause is not a statutory requirement. We note that *Michigan Bell*, although concerning a separate provision of the Telecommunication Act of 1996, is closely analogous. In *Michigan Bell*, the relevant section provides that "[i]n any case in which a State Commission makes a determination under this section, any party aggrieved by such a determination may bring an action in an appropriate Federal District court." 47 U.S.C. § 252(e)(6). This Court determined that this language, referring only to the decision of a State Commission, was not a bar to an action against the individual Commissioners in their official capacities under *Ex parte Young*. *See Michigan Bell*, 202 F.3d at 868.

Commissioners also argue that this Court does not have proper jurisdiction over Telespectrum's complaint because Congress intended that an action to enforce 47 U.S.C. § 332(c)(7)(B) should only occur in state courts. The statute states that an action may be commenced "in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v). Other

*Catrett*, 477 U.S. 317, 322 (1986). This Court affirms summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under the doctrine of *Ex parte Young*, 209 U.S. 123, 159-60 (1908), suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment. *See Michigan Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862 (6th Cir. 2000). The Supreme Court has underscored the importance of the *Ex parte Young* doctrine, stating it is an "essential part" of Eleventh Amendment jurisprudence, and must be upheld "if the Constitution [i]s to remain the supreme law of the land." *Alden v. Maine*, 527 U.S. 706, --, 119 S.Ct. 2240, 2263 (1999). "An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997). Relief under *Ex parte Young* may be foreclosed if the statute in question provides "a detailed remedial scheme for the enforcement against a State of a federally created right," if that remedy is "significantly more limited than . . . the liability upon the state officer under *Ex parte Young*, and if Congress did not intend to "authorize federal jurisdiction under *Ex parte Young* over a cause of action with a limited remedial scheme." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74-75 (1996).

In *Michigan Bell*, this Court determined that an Eleventh Amendment defense to a suit against the commissioners of the Michigan Public Service Commission in their official capacities seeking declaratory and injunctive relief against the enforcement of a Commission decision could be analyzed as a "straightforward *Ex parte Young* case." 202 F.3d at 867. Citing to recent Supreme Court precedent and to other courts, this Court noted that the plaintiff in *Michigan Bell* had alleged

that the commissioners violated the Telecommunications Act of 1996 by enforcing an agreement which is itself a violation of federal law. *Id.* at 867-68. This Court concluded that such an argument was sufficient to state a claim as a matter of law. *Id.* at 867. Moreover, this Court interpreted the Supreme Court's decision in *Alden* to hold that "sovereign immunity does not bar certain actions against state officers for injunctive or declaratory relief." *Id.* at 868.

In this case, Telespectrum is seeking an order to direct the Commissioners (in their official capacity) to issue the necessary authorizations permitting it to construct the tower. Telespectrum is not seeking compensation for lost profits; it is claiming that by failing to grant the application, the Commissioners are continuing to violate 47 U.S.C. § 332(c)(7)(B).[1]  Commissioners do not point to, and we

---

[1] This section states, in pertinent part, as follows:

(7)  Preservation of local zoning authority
. . . .
(B)  Limitations
(i)   The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof–
       (I)   shall not unreasonably discriminate among providers of functionally equivalent services; and
       (II)  shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
(ii)  A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
(iv)  No State or local government or instrumentality thereof may regulate the placement, construction, and modification of

could not identify, any controlling authority which would hold that Congress' failure to name individuals in a statute is singularly sufficient to bar relief under *Ex parte Young*. Therefore, following *Michigan Bell*, we conclude that Telespectrum has shown that its claim is within the *Ex parte Young* doctrine.

Unlike the statutory scheme at issue in *Seminole Tribe*, section 332(c)(7)(B) does not provide for either a "detailed" or an "intricate" regulatory scheme. The section provides only that action may be maintained in "any court of competent jurisdiction," but does not provide for a mediation process, mandate negotiations, impose a shifting burden of proof, or permit the promulgation of regulations by a federal official to resolve a specific dispute. Nor does this section provide for a remedy more limited than or materially different from that available under *Ex parte Young*. We therefore conclude that these distinctions are sufficient to find that this case does not fall within the *Seminole Tribe* exception to the *Ex parte Young* doctrine.

The Commissioners next argue that Congress has limited actions to enforce 47 U.S.C. § 332(c)(7)(B) to those that can be brought against states or local governments by referring to "the final action or failure to act by state or local government

---

personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
(v)  Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.